ELIZA WARREN, NETTIE STEVENS, M. J. HOGAN, R. J. HILL, F. T. SANFORD, RICHARD HILL, ALBERT SADD, JOHN BRENNAN, JOHN ATKINSON, A. E. SHAW, HYRUM MADDEN and JOHN J. CORTEZ, Appellants, v. THEODORE ROBISON, CHARLES M. BROUGH, H. H. SPENCER, GEORGE MURPHY, AD. KUHN, JOHN MAGUIRE, R. A. WELLS, NEWELL BEEMAN, GEORGE W. PERKINS, S. S. SCHRAMM, W. W. COREY, THE CITIZENS' BANK OF OGDEN, a Corporation, and J. C. ARMSTRONG, Receiver, Respondents and Cross-Appellants.

No. 1345.   (70 Pac. 989.)

1. **Banks: Officers and Directors: Depreciation of Stock: Negligence: Liability.**
The directors and officers of a bank can only be held for the depreciation in value of its stock to the extent that such depreciation is due to their negligence, and are not responsible for any part of it which is the result of errors of judgment.

2. **Same:**
In an action by stockholders of a bank against the directors and officers to recover for depreciation of stock, the court found that a certain loan was made by the general manager surreptitiously and without the knowledge of three of the directors, two of whom were at the time out of the State on important business, and one of whom was sick, and that the loan was for some time concealed by the manager. When the directors discovered that the loan had been made, they made all reasonable efforts to collect it. *Held*, that these three directors were guilty of no neglect of duty making them liable to stockholders for loss on the loan.

3. **Findings of Fact: Conclusion of Law.**
A finding of the trial court that a certain course of conduct was negligent is a conclusion of law.

Warren et al. v. Robison et al.

4. **Presumption of Solvency.**
Every man is presumed solvent until proved insolvent.

5. **Banks: Officers and Directors: Negligence: Cashier: Duties.**
In an action by stockholders of a bank against the directors and officers to recover for depreciation of stock, it was found that by the cashier's contract of employment it was agreed that he should not be charged with the responsibility of making loans or selecting securities. The vice-president and manager of the bank was president of a corporation of a speculative character and financially unsound, to the knowledge of the cashier, who was also an officer of the corporation. Without the knowledge of the cashier, the manager negotiated a loan from the bank to the corporation, on its note indorsed by a solvent firm. The cashier, under the instruction of the manager, entered the amount of the loan to the credit of the corporation, and paid it out on the corporation's checks. *Held*, that the cashier was not guilty of negligence or of any violation of his duties to the bank, making him liable to the stockholders for any part of the amount lost by the loan.

6. **Assignee of Stock: How Affected by Assignor's Knowledge.**
A stockholder in a bank, who obtained her stock from a director who had knowledge of the prior commission of certain negligent acts by the directors and stockholders, causing depreciation in the value of the stock, was not precluded from recovering for such negligence by reason of her assignor's knowledge.

7. **Parties: Substitution.**
Under Revised Statutes, section 2920, providing that an action or proceeding does not abate by the death of a party, but that in such case the court may allow the action to be continued by a representative, etc., it will be presumed, where the record shows that a substitution has been made because of the death of parties plaintiff, that the representatives were appointed by a court of competent jurisdiction, and that the order of substitution was regularly made.

8. **Same: New Pleadings: Necessity.**
A party substituted under Revised Statutes, section 2920, as plaintiff, on the death of the original plaintiff, was not required to file new pleadings.

9. **What Considered on Appeal.**
Where a question should have been raised in the trial court it will not be determined by this court.

(Decided December 13, 1902.)

Appeal from the Second District Court, Weber County.—
*Hon. W. M. McCarty*, Judge.

Action by plaintiffs as stockholders of defendant bank against the defendants for an accounting and for damages alleged to have been occasioned by reason of negligence in the management of the bank by its directors and officers. From a judgment holding the defendants liable, the plaintiffs appealed. The defendants, Brough, Spencer, Murphy, and Kuhn also appealed.

AFFIRMED (*except as to defendant Brough*).

*M. D. Lessenger, Esq., A. J. Weber, Esq., Elijah Farr, Esq., James N. Kimball, Esq.,* and *W. L. Maginnis, Esq.,* for appellants.

*T. D. Johnson, Esq.,* for appellant Brough.

*Lindsay R. Rogers, Esq.,* and *E. M. Allison, Jr., Esq.,* for appellants Spencer, Murphy and Kuhn.

It is the cardinal and universal principle of the law of damages that the person injured shall receive a compensation commensurate with his loss or injury, and no more, which may be occasioned him by the wrongful act of another; and it is the right of the person who is bound to pay this compensation not to be compelled to pay more, except costs. Rockwood v. Allen, 7 Mass. 254; Ferrer v. Beale, 1 Ld. Raym. 692; Allison v. Chandler, 11 Mich. 542; Griffin v. Colver, 16 N. Y. 494; Buckley v. Buckley, 12 Nev. 423; Mason v. Hawes, 52 Conn. 12; Page v. Sumpter, 53 Wis. 652; Goodbar v. Lindsley, 51 Ark. 380; Dexter v. Spear, 4 Mason 115; Walker v. Smith, 1 Wash. C. C. 152; United

*States v. Smith,* 94 U. S. 214; *Milwaukee, etc., R. Co. v. Arms,* 91 U. S. 489; 1 Sutherland on Damages, sec. 12.

STEWART, District Judge.—This action was instituted on behalf of plaintiffs, as stockholders of defendant, the Citizens' Bank of Ogden, and all stockholders and creditors and others similarly situated who might thereafter join, against the defendants, for an accounting and for damages alleged to have been occasioned by reason of negligence in the management of the bank by its directors and officers. The action was tried by the lower court without a jury, and a judgment of nonsuit granted, from which judgment plaintiffs appealed, and the judgment of nonsuit as to the defendants Maguire, Beeman, Perkins, Armstrong, and the bank was affirmed; but said judgment was reversed as to defendants Brough, Spencer, Murphy, Kuhn, Wells, Schramm, and Corey. *Warren v. Robison,* 19 Utah 289, 57 Pac. 287, 75 Am. St. Rep. 734. Pending trial from which this appeal is taken, the defendant Schramm died, and his executors were substituted as parties defendants. The plaintiffs R. J. Hill and John Brennan also died before the date of the second trial. Upon the second trial a judgment was rendered by the district court against all the defendants then before it, holding them liable to the plaintiffs in certain specified amounts. Plaintiffs appeal to this court from the judgment, the defendant Brough appeals, and the defendants Spencer, Murphy, and Kuhn also appeal. The appeal in each instance is taken solely upon the judgment roll.

The plaintiffs, appellants, assign in their petition of error eight different errors, but they may all be resolved into one, viz., that the court erred in awarding judgment on the findings in favor of the plaintiffs and against the defendants for any less sum than $20,050, with interest thereon from the twenty-sixth day of December, 1893. The court found in its findings of fact that plaintiffs are the owners of 200 1-2 shares of the capital stock of said defendant, the

Citizens' Bank, of the par value of $100 each, and said appellants contend that they are entitled to recover the full amount of stock subscribed for and paid for by them, to-wit, the sum of $20,050, compensating them for all loss which they sustained by reason of their investment in said bank. The court below, in determining the amount of damages plaintiffs should receive as stockholders of said bank, by reason of the negligence and wrongful acts of defendants, held that said stockholders should be compensated for the loss they actually sustained by reason of such neglectful or wrongful acts, and not for any loss sustained without any fault or neglect of defendants. Finding No. 29 of the trial court is as follows: "The court further finds that the stock of plaintiffs in said bank is worthless and of no value," but does not find that it resulted from the negligence of the defendants. The record in this case discloses that the Citizens' Bank of Ogden was incorporated with a paid-up capital stock of $147,105, transacting a general banking business; that plaintiffs and their intestates were stockholders in said bank, and that many other parties than plaintiffs were stockholders in said bank; that the business of the bank did not prosper, and it had many losses and financial reverses, and that, on December 26, 1893, it made a general assignment for the benefit of its creditors. After paying its creditors, nothing was left of its assets for the stockholders, and the stock became valueless (findings 18, 34, and 29). It further appears from the findings that many of the errors resulting in loss to the bank were errors of judgment, and not caused by reason of any want of care or lack of diligence of any officer of the bank; so that we consider that the holding of the court below, that defendants should respond only in damages occasioned by the wrongful and neglectful acts of such defendants, sound in law, and supported by equity and good conscience. To hold otherwise would be to require defendants to answer in damages for losses sustained by the bank which occurred without fault of defendants. In the law of damages, the universal and car-

25 Utah—14

dinal principle is that the person injured shall receive compensation commensurate with his loss or injury, and no more; and it is a right of the person who is bound to pay this compensation not to be compelled to pay more than that actually occasioned by such person's wrongful acts or negligence; so we consider that damages in this case should be limited to such as were occasioned by the wrongful acts of the defendants. And, since it does not appear from the findings that more damage than that allowed by the lower court was caused by the negligence or wrongful acts of the defendants, the defendants ought not to be compelled to pay for more, and the damages awarded should be prorated among the stockholders proportionate to the amount of stock which each holds, as determined by the lower court.

Said appellants further contend that the trial court should have held, upon the findings of fact, the defendants Spencer, Murphy, and Kuhn liable upon the so-called Cache Valley Land & Canal Company loan. Said finding is as follows:

"No. 23. The court further finds that the transaction mentioned in the twenty-first and twenty-second paragraphs of said amended complaint, and therein referred to as the Cache Valley Canal Company transaction, was a loan made to said canal company by the defendant Theodore Robison (who was then and there acting vice-president and general manager of said bank) surreptitiously and without the knowledge or consent or permission of either the president or any director of said bank, and that said Robison purposely concealed said transaction for some time thereafter from the attention of the president and directors of said bank, without fault or neglect of duty on their part; that at the time said Robison made said transaction, and for a long time thereafter, the defendant Kuhn was absent from the State of Utah, and was at Green River, in the State of Wyoming, there engaged as a party to and as a witness in an important action then and there pending in the district court of said State of

Wyoming and that said Spencer was also at and during said time necessarily absent from the said State of Utah, and in the State of Oregon, there attending to important business interests in which he was interested; and that defendant Murphy was at and during said period of time confinded to his residence by reason of severe personal illness, and was thereby unable to go to said bank or to attend to his duties therein; that when, by due diligence, the president and the directors of said bank discovered and learned of and concerning the said canal company transaction, they made all reasonable efforts to collect for said bank the sum of money involved in said transaction, but were unable to do so; and the court further finds that said bank did not in this transaction sustain any loss or injury which was occasioned by any neglect of duty of either of the defendant directors before the court upon this trial."

It clearly appears from the above finding that said defendants Spencer, Murphy, and Kuhn were not guilty of any neglect of duty in the matter of said loan, but that, after learning of said transaction, the president and directors made all reasonable efforts to collect the amount involved in said transaction; and it does not appear that said loss could have been averted by any care or vigilance which either of them could have exercised. They, therefore, are not liable on said loan.

The defendant C. M. Brough, respondent and cross-appellant, contends: (1) That the findings of fact respecting the transaction of the Cache Valley Land & Canal Company loan are insufficient to support the conclusions of law and judgment made and entered against him; (2) that the findings of fact show such knowledge of the character of the employment of the defendant Brough, and his reliance upon his contract, and the knowledge of plaintiffs of the course and manner of business of said Citizens' Bank, as to estop plaintiffs to assert any claim against him; (3) that plaintiffs are barred as to him by the statute of limitations. The

judgment of the lower court finds defendant Brough liable to plaintiffs in the sum of $2,171.68. Before the second trial of this cause the defendant Brough filed an additional and supplemental answer, and, the defense having been interposed and evidence submitted, the record discloses a different condition than that submitted to this court upon the former appeal. A review of the findings of fact affecting defendant Brough is considered necessary in determining his rights herein. They are, in addition to finding No. 23, heretofore quoted, as follows:

"(37) The defendant C. M. Brough was employed in said bank, under the title of cashier, from the latter end of January, 1892, until the twenty-first day of December, 1893.

"(38) That the terms of his employment (except the amount of salary) and the duties required of him are expressed by a certain letter written by him to the board of directors, and accepted by them as the basis of his employment, which said letter is in the words and figures as follows, to-wit: 'Ogden, Utah, November 15, 1891. Citizens Bank Directors, Theodore Robison, Manager, City. Gentlemen: Replying to yours of 11-9-91, I beg to say, there is no inducement in your offer for me to leave the Utah National Bank for same salary, and perhaps greater responsibilities. If you will make your offer $200 per month, with the understanding that I shall not be charged with the responsibilty of making loans, or selecting securities (because you have a manager), I shall come to you between January and February, as I want to take a rest. Respectfully, etc., C. M. Brough.'

"(39) That the said C. M. Brough, acting in good faith, never, at any time during the course of his employment in said bank, assumed to, or believed it to be his duty under his said contract to make loans, pass upon securities, or to enforce collections, or in any manner advise or to assist in the management of the affairs of the said bank, but, in fact and in truth, only performed those duties which appertain

to the paying and receiving teller of a bank as usually performed by said officer; that is to say, receive deposits and payments of money due upon notes and other bills, and to pay out moneys on checks and drafts, and to keep such books of the bank as is usual and customary in banks, which said duties so performed by him were the same as those imposed upon and performed by his predecessors in said office.

"(40) That the committee provided to serve, by the by-laws of the said bank, consisting of three stockholders, two directors, cashier, and manager, to pass upon the loans and discounts, and the other matters and things in said by-laws provided, was in fact never appointed, and in lieu of said committee there was appointed, for the purposes aforesaid, and to perform said duties, a committee called the 'Executive Committee,' consisting of three members of the board of directors, which said committee performed and were required to perform the said duties during the entire life of said bank.

"(41) That the plaintiffs in this action, and each of them, and all the stockholders in said bank, knew, or had full means of knowing, that the above first-named committee was never appointed, and that the duties devolving upon it by the by-laws were being performed by the last -named committee, and that the said defendant C. M. Brough was performing no duties in respect to the management of the said bank, but was performing only those duties as above set out.

"(42) That the plaintiffs John J. Cortez, F. T. Sanford, Richard Hill, R. J. Hill, Albert Sadd, M. J. Hogan, and John Atkinson were all borrowers at said bank, and before the employment of the said defendant Brough therein, and knew that the manager thereof was its active executive officer, and that the cashier performed no duties in respect to loans made by the said bank.

"(43) That the said defendant C. M. Brough, at the time of his said employment and prior thereto, was advised

of all the matters and things as herein found in the fore-going findings, and relied thereon, and also relied upon his contract hereinbefore set out, in his acceptance of employ-ment in said bank, and acted thereon in good faith, and in the discharge of duties which he performed while in said employment."

"(45) That the Cache Valley Land & Canal Company was a corporation organized for the purpose of constructing a canal system in the State of Idaho, and was an enterprise speculative in character, and dependent upon the ability of its promoters to bond the same to be carried to successful issue; that, at the time of the loan made to it as herein stated, negotiations were in progress for bonding the prop-erty and franchises of said company for a large sum of money; that the said Theodore Robison was president of said Canal Company, and the defendant C. M. Brough was a stockholder and officer thereof, viz., treasurer; that on the seventeenth day of February, 1893, as in finding No. 23 stated, the said Robison made a loan to said Canal Company in the sum of $10,000, in the manner following, viz.:  On said day he caused to be executed by said company a note in favor of the said Citizens' Bank, and indorsed the same him-self, and secured the same to be indorsed by one R. H. Whipple and Corey Bros. & Co., and forwarded the said note to the Continental National Bank of Chicago for dis-count; that on the twenty-fourth day of said month he was advised by said Chicago bank that said note had been dis-counted, and thereupon informed said Brough that said loan had been made, and instructed him, the said Brough, to enter said sum so loaned to the credit of said company in the books of the bank; that said Brough had no knowledge of the making of said loan until said information and instruc-tions were given, and the same was made without his advice or knowledge; that, pursuant to said instructions, said Brough (in violation of his duties to said bank) entered the said sum to the credit of said Canal Company, and (in violation of

his trust as an officer of the bank) paid the same out in due course, upon the checks of said company, and the amount so loaned was wholly lost to said Citizens' Bank; (and upon the foregoing facts, the court finds that in entering the said sum to the credit of said company, and paying the same out upon the checks of said company, the defendant C. M. Brough, well knowing the financially unsound, uncertain, and speculative character of said company, was negligent in the discharge of his duties)."

"(21) That said Corey Bros. & Co., when the said loans were so made and renewed as aforesaid, was solvent and financially good for said sums so loaned, and was so considered by the business men of Ogden City. That this money was so borrowed by said Corey and his firm without giving any security therefor to said bank; and the court further finds that, in the permitting of the said loans to be made, all of the then acting officers of said bank, except the defendant Brough, in violation of the statutes of Utah, permitted said loans to be made."

Fnding No. 45 is the basis upon which the trial court held defendant Brough liable and entered judgment against him. From said finding it appears that defendant Robison made the said Cache Valley Land & Canal Company loan without the knowledge or consent of defendant Brough; that it was made to the company, its note taken indorsed by Robison, Corey Bros. & Co., and R. H. Whipple; that defendant Brough, under the instructions of defendant Robison, entered the amount so borrowed to the credit of the company in the books of the bank, and paid it out in due course.

The district court finds that the acts of Brough, in entering the credit and paying out money in due course, were in violation of his duty to said bank, and negligent. But such finding is a mere conclusion of law. The district court finds that the Cache Valley Land & Canal Company was financially unsound, uncertain, and speculative in character, and that Brough knew it; but the findings do not disclose

that the indorsers upon said note were financially unsound. On the contrary, it affirmatively appears from finding No. 21 that the firm of Corey Bros. & Co. was solvent and financially good, and, as no finding is made as to the financial standing of the indorser Whipple, this court cannot indulge in the presumption that such indorser was financially unsound or insolvent. Every man is presumed solvent until proved insolvent. The mere fact that the Cache Valley Land & Canal Company was financially unsound at the time the loan was made would not warrant the conclusion that directors or persons making the loan were guilty of negligence. Loans are frequently made for the sole purpose of tiding individuals and corporations over times of financial embarrassment, and when such loans are made in good faith, upon property security, or upon reliable individual indorsement, as it appears was the case when the loan was made, negligence cannot be charged.

From an examination of the findings of fact heretofore quoted it will be observed that, under the terms of his employment, the defendant Brough was not charged with any duty respecting the making of loans, and that he never assumed to discharge any duties of that character. His duties were ministerial, as set forth in finding No. 39. The position occupied by him was not that of a director. Under his contract he was an employee of the directors, and was required to perform his duties honestly; and it appears from the findings that he did perform the duties required of him in good faith, and to the satisfaction of his employers, and with the knowledge and acquiescence of the stockholders of said bank. It is clear from the findings that the defendant Brough did not occupy the relation of trustee to the stockholders as *cestui que trust*. The mere fact that he entered the credits on the books of the company, and paid out the money in due course, even though he had knowledge of the unsoundness of the Cache Valley Land & Canal Company, would not render him liable, as he simply performed

his duties under the terms of his employment. Finding No. 23 recites that the directors attempted to collect the indebtedness, and used all reasonable efforts to do so, and at a subsequent meeting defendant Brough was made assignee by vote of plaintiffs, thereby repelling any implication of fraud on his part. This court fails to see from the record wherein defendant Brough violated any duty owing to the bank or its stockholders.

Defendant Brough also relies upon the statute of limitations as a defense to said action, but a consideration of that question is deemed unnecessary.

Cross-appellants, Spencer, Murphy, and Kuhn, contend: first, that the lower court erred in its conclusions wherein it awarded damages against said defendants in favor of plaintiff Nettie Stevens; second, the court erred in its conclusion of law in holding as matter of law that the representatives of R. J. Hill and John Brennan, deceased, should recover judgment, because there was no pleading filed in the cause by either of their representatives. Said appellants contend that the trial court erred in awarding damages against defendants in favor of plaintiff Nettie Stevens, for the reason that said Nettie Stevens, as shown by the findings, became the owner of her twenty shares of stock in said bank as assignee of her father, Sidney Stevens, who was a director of the bank from January, 1892, to October, 1892, and as such director he became acquainted with or had the opportunity of becoming acquainted with the affairs of the bank, the methods of its management, and the duties performed by its officers. Would the fact that said stock was acquired subsequent to the commission of the act of defendants Murphy, Spencer, and Kuhn, with the knowledge of the assignor, preclude a recovery by the assignee? Under the holdings of the trial court, and which are sustained by this court, the defendants are held liable in damages occasioned only through the negligence and fault of defendants; and, inasmuch as such damages are prorated among the

stockholders in the ratio that the stock of each bears to the whole amount of the stock, it is obvious that defendants not only sustained their proportion of the loss as individual stockholders, but are answerable as officials of the bank to the plaintiffs for the proportionate loss sustained by plaintiffs as stockholders. Under such circumstances, had defendants Murphy, Kuhn, and Spencer assigned their stock, we see no reason why their innocent assignees might not recover against the assignor official of the bank. Certainly, innocent third parties should not be precluded from recovering because such assignors had knowledge of the wrongful acts of the bank officials. So, in the case at bar, the fact that plaintiff Nettie Stevens obtained her stock from her assignor, who had knowledge of the wrongful acts, would not preclude a recovery. Had Sidney Stevens been made a party defendant, and had the findings included him among the officials responsible for the loss, then as assignee, innocent of such wrongful acts, Nettie Stevens would be entitled to recover from him as well as the other officials so held. The authorities cited by counsel for said cross-appellants indicate that a purchaser of stock in a corporation, as a general proposition, is not allowed to attack the acts and management of the company prior to the acquisition of his stock; yet we think that the application of such a principle to the facts under the findings in this case would be imposing an unjust hardship upon an innocent third party. Under her assignment, said Nettie Stevens acquired the rights of her assignor as a stockholder not burdened by what her said assignor may have done as a director or official of the bank, which might preclude him from a recovery. She stands in the same relation, so far as her rights are affected, as though she had acquired her stock, after the wrongful acts of defendants, from one of the plaintiffs.

The second error alleged is that the representatives of plaintiffs Hill and Brennan, after an order of substitution was made, failed to file any pleading, which it is contended

was necessary to raise any issue as against the defendants. Section 2920 of the Revised Statutes of 1898 provides that "an action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action or proceeding survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In the case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." The evident purpose of the statute providing for a substitution of a party in case of death, etc., occurring during the pendency of an action, is to enable the parties to continue the litigation without unnecessary expense and delay. The record shows that substitution was made in this case by an order of the court, and, nothing appearing to the contrary, this court will presume that the representatives were appointed by a court of competent jurisdiction, and that the order of substitution was regularly made.

Upon the question of the necessity of filing a new pleading in cases of substitution, we quote approvingly from the Encyclopaedia of Pleading and Practice (volume 20, pp. 1061-1063), as follows: "As a general rule, the substituted party takes up the prosecution or defense of the action at the point where the original party left it. He is entitled to all the rights possessed by his predecessor, and, on the other hand, assumes all his burdens and liabilities. The pleadings already filed inure to the benefit of the new party, and while he may be permitted to file amended or supplemental pleadings which do not change the issues involved in the case, he is not bound to do so. Nor does the substitution of a new party necessitate the filing of new pleadings by the adverse party."

The question as to whether or not the shares of stock

had passed into the hands of such personal representatives, as part of the assets of the estates, should have been raised in the trial court, and hence cannot be determined by this court.

It is ordered and adjudged that the judgment of the court below be, and the same is, hereby affirmed, except as to the appellant Chas. M. Brough, and as to him, the same is reversed, and, that he recover his costs in this behalf expended and that the original appellants and cross-appellants, except the said Brough, pay the costs of their respective appeals. It is further ordered that the case be remanded with directions to the court below to modify the judgment in accordance herewith.

BASKIN and BARTCH, JJ., concur.