RALEIGH v. WELLS et al.; MUTUAL INV. CO. v. RALEIGH.

No. 1639 (81 Pac. 908).

1. HUSBAND AND WIFE—PLURAL WIVES—STATUS—CAPACITY TO INHERIT.—A plural wife does not acquire the status of a lawful wife, and is without the pale of the law of inheritance as to any property which her husband has acquired previous to her marriage or which he may thereafter acquire.

2. SAME—RIGHT TO DOWER.—A plural wife acquires no dower right in her husband's property.

3. SAME—CAPACITY TO ACCEPT GIFT—ADVERSE POSSESSION.—A plural wife may accept a gift of her husband's property, or may acquire title to real estate of her husband by adverse possession founded on a gift.

4. ADVERSE POSSESSION—FOUNDATION UPON GIFT—EVIDENCE—CHARACTER—PROOF.—Where adverse possession is founded upon a parol gift, the gift must be established by clear and convincing evidence, and the possession must be shown to have been hostile, and not merely that of a licensee.

5. SAME—IMPROVEMENTS—BURDEN OF PROOF.—Where a claim of title is based on adverse possession under a parol gift, the burden of proof as to improvements made and other acts of ownership is upon the claimant.

6. SAME—EVIDENCE—SUFFICIENCY.—A plural wife, who had lived for forty-six years on premises belonging to her husband, did not acquire title by adverse possession based on a parol gift, where her residence was merely as a plural wife, and her husband had himself exercised ownership and dominion over the property, paid the taxes, made and paid for improvements, made declarations consistent with ownership, agreed to lease a part of the property shortly prior

to his death, and had devised the property by will, and she did not assert any legal claim to the property at the time of the distribution of her husband's estate, but acquiesced in the terms of the will.

(Decided July 11, 1905.)

APPEAL from District Court, Salt Lake County; W. C. Hall, Judge.

Separate actions by Emily P. Raleigh against Caroline C. R. Wells and others and by the Mutual Investment Company against Emily P. Raleigh. The actions were consolidated, and from the adverse judgment rendered Emily P. Raleigh appeals.

AFFIRMED.

*Rogers & Street* for appellant.

*H. D. Folsom, Jr., King, Burton & King* and *H. S. Tanner* for respondents.

BARTCH, C. J.

It appears from the record herein that Emily P. Raleigh brought action to quiet title in herself to certain real estate situate in Salt Lake City, and that afterwards the Mutual Investment Company, defendant therein, who had purchased the property in reliance upon the will of Alonzo H. Raleigh, the deceased, brought an action against the plaintiff therein to have the title quieted in that company. At the trial both cases were consolidated and tried together; the controversy in the one action being practically the same as in the other, and the parties to the second being also parties to the first suit. In this court the two cases were argued and submitted together, and therefore this opinion must be regarded as deciding both cases, although in terms and as to the parties it refers directly to the first case.

It appears from the evidence that in January, 1857, Emily P. Raleigh, the plaintiff, and her sister, Elizabeth, be-

came the polygamous wives of Alonzo H. Raleigh, now deceased, and they lived with him and his other wives on the premises in controversy, which had been previously acquired by himself and legal wife. Mrs. Caroline C. R. Wells, his daughter of his legal wife, and life tenant of this property under his will, also continued to reside there until 1879, and after she left two of his wives continued to live there; and the plaintiff and Mr. Raleigh resided upon the premises as husband and wife until 1886 or 1887, when he, to avoid prosecution for polygamy, moved across the street to his daughter, Mrs. Wells, and the plaintiff continued to reside upon the premises in dispute. The proof shows that at the time of her husband's death she had resided there for about forty-six years; and there was evidence introduced on the part of the plaintiff tending to show that for many years she had claimed her husband had given the property to her as her home, that she had made repairs thereon, and that it belonged to her. On the part of the defendant, the evidence tends to show that the plaintiff lived on the property merely as the plural wife of Mr. Raleigh, and that he always exercised ownership and dominion over it, paid the taxes, made and paid for the improvements, and generally did such acts and made declarations respecting the property, up to the time of his death, as were consistent with ownership. In his will, made April 15, 1890, and admitted to probate January 13, 1902, the testator dying May 13, 1901, he bequeathed the property in controversy to the Mormon Church, subject to life estates of his daughter, Mrs. Wells, and his son, Jacob T. Raleigh. The life estate of the latter, however, was, subsequent to the death of the testator, extinguished by the church conveying for his benefit, by deed, a part of the lot to the executors under a provision of the will, and the remainder of the lot, with the appurtenances, subject to the life estate of the daughter, was finally acquired through mesne conveyances by the defendant Mutual Investment Company for a valuable consideration. His other property the testator bequeathed to his other heirs and plural wives, and the plaintiff as shown by the evidence, received an equitable share of it. On June 20, 1902, a par-

tial distribution of the estate was made, and the property bequeathed to the plaintiff set apart to her, and the same was accepted and has been retained by her. She has also received and retained the monthly allowances paid her by the executors under the provisions of the will; nor did she file any protest against the decree of distribution. She and her children, after the death of the testator, wrote a letter respecting the property to the president of the church, in which no claim of ownership, by gift, adverse possession, or otherwise, was made; but they prayed that the legatee restore to her her home. It also appears that, shortly previous to his death, the testator had agreed to execute a written lease for a part of the premises. There is much other evidence in the record tending to show that the testator, up to the time of his death, continued to exercise dominion over the same. The plaintiff has set up title in the disputed premises by adverse possession for a period of more than forty years, and seems to base such possession on a gift from the testator. At the trial the court found all the issues in favor of the defendants, and decreed accordingly. Thereupon this appeal was prosecuted, and many errors assigned.

The real contention appears to be that declarations of Mr. Raleigh, for and during more than seven years preceding his death, were such as to evidence a parol gift of the property in controversy to the appellant, antedating the period of the statute of limitations respecting real property; that for more than seven years the appellant occupied the alleged premises by adverse possession; and that, therefore, her title cannot be affected by any provision of the will, which will could not take effect until the death of the testator, nor by the manner in which the defendant, Mutual Investment Company, acquired its deed to the property. The court having found and decided to the contrary of this contention, it is insisted that its findings and decisions are erroneous; but, from a careful examination of the proof, the conclusion seems irresistible that the case has been correctly decided, and that the contention of the appellant cannot be maintained. It is true that the appellant has lived upon those premises, and that they

constituted her home, for nearly half a century. Living there, it may be true, as she says, that she acted the part of a dutiful wife to a husband, that she has become greatly attached to the home where she reared her children, and that now in her old age she ought not to be compelled to leave that home. However this may be, whatever wrong she may think has overtaken her, neither law nor equity can, under the circumstances, grant her any relief. The misfortune, if in fact it be a misfortune, she must attribute to her own act—her own volition to become a plural wife. No doubt, if she had been a lawful wife, she might have renounced rights under the will of the testator, and then have appealed with much force to the conscience of the chancellor to so administer equity and justice as to save her home to her; but, when she consented to become a plural wife, she did so at her peril, in so far as the law of inheritance is concerned, and, thereby failing to acquire the status of a lawful wife, she at that time placed it beyond the power of the chancellor to grant her relief of the kind she now seeks, for thenceforth she was without the pale of the law of inheritance as to any property which her husband had acquired or might thereafter acquire. As to all such property she could but depend for justice upon the will of him in whom she had thus confided. Respecting his property, which he then had or might in the future acquire, she was, under the law which she invokes, after such marriage, as before, but a stranger, notwithstanding she had assumed and discharged the duties and responsibilities which usually result from marriage relations. If, therefore, he had seen fit to bequeath all of his property to another, she would have had no lawful right to complain; nor could, even in such case, any court grant her relief by enforcing a dower right, for as a plural wife she acquired no such right. She could, doubtless, have accepted a gift, and it would have been valid under the same circumstances as when made to a stranger. So such a wife could acquire title to real estate of her husband by adverse possession, founded on a gift under the same circumstances as could a stranger. The theory upon which this case was tried by the learned counsel for the appellant

shows that they must have recognized these principles, for they based their case upon adverse possession founded upon a donation from the testator, the owner of the property, and endeavored to show such circumstances as would bring it within the statute; but in their proof they failed. It is true the testator made declarations, used some expressions, according to the testimony of some of the appellant's witnesses, that, standing alone, might more or less strongly suggest the idea of a gift and adverse possession, a holding and using of the property as her own, and as recognizing no right thereto in him, the donor; but when that testimony is considered with the evidence, oral and documentary, showing the testator's declarations and acts of ownership, the dominion he exercised, by leasing and otherwise, over the property, and in connection with the will of the alleged donor, wherein he bequeathed the identical property to others, the validity of which will the appellant clearly recognized by accepting other property and allowances in accordance with its terms without protest, and when that evidence is further considered with the letter to the president of the church, wherein the alleged donee and her children complained of the disposition of the property made by the testator, and wherein, expressing their surprise at the will and in effect recognizing the testator's right of disposition, they prayed that he, head of the church, might interfere in plaintiff's behalf, and restore to her the home where she had lived all the years, without claiming any title in herself, but simply limiting the acts of her husband, and pleading for the restoration of her home by the legatee —when the testimony of herself and witnesses is thus considered in connection with all these things, and others of like character and import appearing from the record—the conclusion is inevitable that there was no such adverse possession as had ripened into a title indefeasible by the will of the testator. Where adverse possession is founded upon a parol gift, the gift must be established by clear and convincing evidence, and the possession must be shown to have been hostile, and not merely that of a licensee; and the burden of proof, as to improvements made and other acts of ownership upon the

faith of the gift, is upon him who asserts title by virtue of the donation and possession.

Courts watch gifts, *inter vivos* with caution, especially where, as here, their enforcement would result in an inequitable distribution of the decedent's property.

> "To establish a parol gift of land, the clearest and most satisfactory evidence is required. The proof must be clear, definite, and conclusive, not only as to the fact of the gift, but also of acts done by the donee upon the faith of the gift, such as would render inequitable any attempt on the part of the donor to avoid it." (14 Am. & Eng. Law, 1042.)

In Waterman's Spec. Perf. Contr. section 271, it is said:

> "If there be an alleged parol gift of land, the the mere possession of the donee does not constitute part performance; there being no valuable consideration, and possession in such a case not being inconsistent with permission simply to occupy the land."

In *Ogsbury v. Ogsbury,* 115 N. Y. 290, 22 N. E. 219, it was observed:

> "The defense was title in the defendant to the *locus in quo,* and this was rested upon three grounds —a parol gift by the testator, a devise of the lot by his will, and an adverse possession. The General Term deemed the proof of a parol gift by the testator unsatisfactory. Such proof should be very definite and certain to serve as a basis for that equitable relief or protection which dispenses with a writing and disregards the statute of frauds, and in this case it is quite doubtful and uncertain. But even assuming its sufficiency, a further difficulty remains. There was no proof of any fact sufficient to relieve the gift in equity from a necessity

of a writing. It is said that the defendant went into possession and made improvements. I doubt if a mere entry into possession, unless, possibly, under some very unusual and exceptional circumstances, will warrant a decree of specific performance. But, if it ever does, that possession must be very clear and definite, such as would characterize the action of an owner, and be inconsistent with the hypothesis of a mere license; for in this class of cases equity dispenses with a writing only when definite and unequivocal facts exist which point with certainty to a prior parol agreement of gift or sale and serve to indicate its existence, and so may be taken as a substitute for the usual written evidence." (14 Am. and Eng. Ency. Law, 1041-1045, 1049; 1 Am. and Eng. Ency. Law, 789, 820, 834; Waterman, Spec. Perf. Contr., secs. 187, 291; *Allison v. Burns,* 107 Pa. 50; *Shirley v. Shirley,* 92 Cal. 44, 27 Pac. 1097; *Wilson v. Wilson,* 99 Iowa. 688, 68 N. W. 910; *Ballard v. Ward,* 89 Pa. 358; *Murphy v. Stell,* 43 Tex, 123; *Hardesty v. Richardson,* 44 Md. 617, 22 Am. Rep. 57.)

In this case the appellant resided on the property the same as the other wives of the testator, and there appears to be nothing in her possession inconsistent with a mere license or permission from her husband to reside on the premises. There were no such overt acts or declarations of ownership on her part as to impart notice to him that her possession was hostile. Nor does the evidence show a parol gift that can be enforced. The most that can be said of the evidence respecting the gift and possession is that it is conflicting with the great preponderance thereof on the side of the respondents, and therefore the findings and decision of the trial court cannot be disturbed. It thus becomes unnecessary to discuss any other question presented.

The judgment is affirmed, with costs.

McCARTY and STRAUP, JJ., concur..