## BOLAND v. NIHLROS et ux.

No. 4915.   Decided November 18, 1930.   (293 P. 7.)

*A. A. Duncan,* of Salt Lake City, for appellants.

*Dey, Hoppaugh, Mark & Johnson,* of Salt Lake City, for respondent.

FOLLAND, J.

Plaintiff, as executor of the will of Josephine A. Park, sued to recover possession of certain described premises in Salt Lake county. The defendant A. B. Nihlros claims a life estate in the property by reason of an alleged oral gift

from Mrs. Park.    Judgment was in favor of plaintiff for possession of the premises and damages. Defendant appeals.

Josephine A. Park was the daughter of Laura N. and stepdaughter of the defendant A. B. Nihlros.    She lived with her mother and stepfather in Sweden from the time she was 7 years of age until she was 13, at which time she came to Utah, where she lived six or seven years and then moved to New York City.    Nihlros and his wife remained in Sweden until about 1907, when they came to Utah and settled on a farm at Bear River City, and there resided until 1913, when they came to Salt Lake county to reside on the premises in controversy.    In 1913, Mrs. Park who, in the meantime, had become a woman of considerable means, came to Salt Lake City and bought a house and a 5-acre tract of land in Holladay, Salt Lake county, as a home for her mother and stepfather, whom she placed in possession thereof.    Title to the property was taken and retained by Josephine A. Park.    The house at the time was unfinished, a room was added to the rear, and a porch to the front, and  other improvements made  to the house.  Chicken coops and a granary were built upon the place and other improvements made to the property.    Defendant A. B. Nihlros and his wife, Mrs. Park's mother, resided upon this property together until the death of Mrs. Nihlros in February, 1922, and A. B. Nihlros has continued in possession thereof.    The defendant Mrs. A. B. Nihlros, the present wife of A. B. Nihlros, claims no interest in the property, although a party to the action and an appellant herein.  In plaintiff's complaint it is alleged that the plaintiff is the duly appointed, qualified, and acting executor of the last will and testament of Josephine A. Park deceased; that Mrs. Park died in March, 1923, and at the time of her death was the owner of and entitled to the immediate possession of the property in controversy, which is fully described; that demand had been made in writing upon the defendant A. B. Nihlros on the 22d day of July, 1922, for possession of the premises and that he had failed to comply with said demand

and refused to vacate or surrender the same and still retains possession thereof; that the plaintiff as executor is entitled to the immediate possession of the premises with the prayer for possession and for damages. The answer of defendant alleges that Mrs. Park in 1913 purchased the land described in the complaint as a home for her mother and stepfather and that in consideration of love and affection for them she "gave, granted and conveyed the land to the said Laura Nihlros and defendant A. B. Nihlros for their and each of their use and enjoyment during their natural lives and the natural life of each of them by an oral grant or gift"; that they thereupon went into possession and continued in possession of the premises jointly until the death of Laura Nihlros, and that since that time defendant A. B. Nihlros has continued in possession and still occupies the premises; that, in pursuance to said gift and grant, the defendant has cared for the place, kept the buildings in repair, made extensive permanent improvements thereon, describing them, of a reasonable value of not less than $4,000, and that, by virtue of such grant and gift and the making of permanent improvements on the land and his continued possession thereof, he is now the owner of a life estate and entitled to the exclusive use and enjoyment thereof during his life. The court made findings to the effect that Josephine A. Park in the year 1913 purchased the property from Robert McDonald and his wife for the purchase price of $5,000 and shortly thereafter placed in possession of the premises her mother, Laura Nihlros, and her stepfather, A. B. Nihlros, who continued in possession and took and enjoyed the uses and profits thereof until the death of Laura Nihlros in February, 1922, and that the defendant A. B. Nihlros has continued in possession since and has refused to comply with the written demand to surrender possession of the premises; that Josephine A. Park died in March, 1923, leaving a last will and testament by the terms of which the executor thereof is required and directed to sell the premises described in the complaint and in the find-

ings, which will was duly admitted to probate in the district court of Salt Lake county and the executor named therein, plaintiff herein, was duly appointed and qualified as such executor; that Josephine A. Park did not during the year 1913 or at any time or at all give or grant or convey the premises described to A. B. Nihlros during his natural life or for any other period or term by verbal gift or grant or otherwise or at all, and that he did not enter into possession of the premises or continue in possession in pursuance to any grant or gift of the life estate, nor make any valuable improvements or repairs thereon in response to any verbal gift, and that the valuable improvements placed on the premises during the period of occupancy by A. B. Nihlros and Laura Nihlros were placed thereon at the sole cost and expense of Josephine A. Park; that the defendants produced no evidence that they or either of them had paid the general taxes on the premises since they were acquired by Josephine A. Park; that A. B. Nihlros had never prior to the service of the written demand claimed or asserted a life estate in the premises adversely to Josephine A. Park; that a fair reasonable rental value of the premises during the period from April, 1913, to April, 1918, is $30 per month; from April, 1918, to April, 1923, $35 per month, and since April, 1923, $40 per month, and that defendants had not paid to plaintiff any sums whatsoever as rent for the premises. Judgment thereupon was rendered in favor of the plaintiff and against the defendants for possession of the premises and the sum of $3,000 as damages for wrongful detention since the service of the written demand.

The alleged errors are presented under three heads: (1) Alleged error of the trial court in ruling upon and excluding evidence sought to be elicited from the defendant A. B. Nihlros, said exclusion being based upon Comp. Laws Utah 1917, § 7123, subd. 3; (2) alleged error in admitting in evidence a written demand for the possession of the premises and in entering judgment for damages; (3) that the evidence shows an oral gift or grant, possession taken, and

improvements made sufficient in value to entitle the defendant A. B. Nihlros to specific performance in equity of the alleged oral gift of a life estate in the property, and that the court erred in not so finding and in finding to the contrary.

We pass the assignments under the first heading, since it is clear the appellant cannot take advantage of the ruling excluding the evidence sought to be elicited, unless it was proven that there was an oral grant or gift of the premises to him. As we hold that there was no such gift to him, it becomes wholly unnecessary to consider the first assignments of error.

The second assignment of error is that the court erred in admitting in evidence the written demand for possession of the land served upon the defendant A. B. Nihlros in July, 1922, which was six years before the commencement of this action. It is contended that this lapse of time operated as an abandonment of all claim and demand under the notice. It is also contended that the notice served by an agent of Mrs. Park during her lifetime lost its force upon her death, and that the executor was under the necessity of serving another demand for possession before bringing this action. The only case cited by appellant in support of his argument of this assignment is *Raines* v. *Hindman,* 136 Ga. 450, 71 S. E. 738, 38 L. R. A. (N. S.) 863, Ann. Cas. 1912C, 347, which holds that a landlord who sells his property during the tenancy cannot thereafter maintain an action to recover possession from the tenant. This case not being in point is not helpful. The contention made by appellant is without merit, since the evidence shows, that suit was brought by Mrs. Park in the city court shortly after the demand was served. There was no such delay in bringing suit as would work an abandonment of the claim. There were delays, however, in bringing this case to trial in the city court. Mrs. Park lived in New York, and for a time it was uncertain whether she could come here to testify or her deposition be taken. In less than a year after the suit

was brought, she died, necessitating another delay. After the appointment of the executor he was substituted as plaintiff instead of Mrs. Park. When the case was called for trial, it could not be tried on the day set, as it was found that the chief witness for the plaintiff had to leave the city and be absent from the state, so the case was continued. When it finally came on for trial in the city court, questions were raised as to the jurisdiction of the court on account of the issues made in defendant's answer. The plaintiff then dismissed the action without prejudice and immediately commenced the present action in the district court. There was clearly no abandonment of the demand for possession. The pendency of the action was notice to appellant that Mrs. Park, and after her death her executor, had not abandoned claim for possession, but were still insisting upon it. Mere delay, where explained as this is, does not render the demand of no force or effect. Under our statute, Comp. Laws Utah 1917, § 6513, in case of death of a party to a pending action, the personal representative may be substituted for the decased. The substituted party is entitled to all the rights of his predecessor, assumes all his burdens and liabilities, and is entitled to carry on the litigation from the point where the original party left it. *Warren* v. *Robison*, 25 Utah 205, 70 P. 989.

The principal argument presented by appellant is directed to the proposition that the evidence shows an oral gift or grant, possession taken, and improvements made sufficient in value to entitle him to specific performance in equity of the alleged oral gift of a life estate in the property. The trial court found against appellant on ■ these propositions. The law is well settled in this state that, before a court can decree specific performance of an oral gift of land, it must appear by evidence that is clear, convincing, and unequivocal: (1) That there was a parol grant or gift by a contract or agreement which must be complete and certain in its terms; (2) possession taken and improvements made by the donee pursuant to and in

reliance upon such oral gift; (3) that the improvements so made are substantial, and, not as an absolute rule but as a guiding principle, that the value thereof be in excess of the rental value during the time of occupancy; and (4) strong equities in favor of the donee, so strong that it would amount to a fraud upon him to allow the statute to be interposed to defeat his claim. *Raleigh* v. *Wells,* 29 Utah 217, 81 P. 908, 110 Am. St. Rep. 689; *Price* v. *Lloyd,* 31 Utah 86, 86 P. 767, 772, 8 L. R. A. (N. S.) 870; *Adams* v. *Manning,* 46 Utah 82, 148 P. 465; *Stephens* v. *Stephens,* 51 Utah 267, 169 P. 742; *Hargreaves* v. *Burton,* 59 Utah 575, 206 P. 262, 33 A. L. R. 1481; *Trenchard* v. *Reay,* 70 Utah 19, 257 P. 1046; *Clark* v. *Clark* (Utah) 279 P. 502.

In *Clark* v. *Clark,* supra, the court quoted with approval from 36 Cyc. "Specific Performance," p. 691, as follows: "The requisite of clear, conclusive and unequivocal evidence is especially important in the case of a parol gift of land, since the fact that the parties are usually relatives tends to account for plaintiff's occupation of the land as permissive, not as the result of contract. The proof must indicate more than a vague intention to give, or a family arrangement resting upon the will of the parties." This quotation is particularly pertinent to the present case. See, also, 28 C. J. "Gifts," 680, 681; 12 R. C. L. "Gifts," 939.

Mr. Justice Straup, in the case of *Price* v. *Lloyd,* supra, in an exhaustive opinion, discussed the fundamental principles applicable to a parol gift of land, and stated the following rule:

"Courts of equity, in establishing the doctrine invoked by plaintiff, have not, by any means, intended to annul the statute of frauds, but only to prevent its being made the means of perpetrating a fraud. In order that a plaintiff may be permitted to give evidence of a contract not in writing, and which is in the very teeth of the statute and a nullity at law, it is essential that he establish, by clear and positive proof, acts and things done in pursuance and on account thereof, exclusively referable thereto, and which take it out of the operation of the statute. Pomeroy §§ 107, 108. The law, under the statute of frauds, excluding all evidence of such a contract, to justify a court

of equity in going against the plain words of the statute, a plaintiff is required to present strong equities for so doing, and a showing that a fraud will be perpetrated upon him if the statute is permitted to be interposed. Such a presentation and showing the plaintiff has failed to make."

There is nowhere in the record any direct evidence of a grant or gift of a life estate to appellant, but he seeks to spell evidence of such a gift out of statements made by Josephine A. Park as testified to by various witnesses. The appellant called as witnesses the man and wife from whom the property was purchased, two real estate brokers who were instrumental in making the sale, and an attorney who examined the abstract for Mrs. Park. All the statements testified to by these witnesses were made by Mrs. Park while she was negotiating and before the purchase was completed by payment of the money and delivery of the deed. The statements testified to by these witnesses are the following:

"Well, she looked at the place, and she told me she had looked at one or two other places but this place suited her better than any other place she had seen, but she wouldn't buy it unless it suited—I do not know if she said her father or mother, or folks, or the parents, but I got the idea it was her father or mother, but Mr. Nihlros came down inside of a week or ten days to look at the place, and said it suited him, and shortly after that she bought the place.

"Q. She said if it suited her father or mother? A. She stated that part of it before, she was buying it for her father or mother, or parents, whatever she said, but I had an idea it was for her parents she was buying it, just the way she stated it to me."

"When we met Mrs. Park, when she came out, she said she was buying the place for her father and mother, and they were to live there just as long as they lived, that was the understanding I got from Mrs. Park."

"Mrs. Park wanted her father to see the place because she was buying it for him, and he was going to live there, and it was going to be his place."

"She said she wanted to pick out a place that would be suitable for Mr. Nihlros and his wife. She was from New York, as I remember it, and she was attempting to locate them in a place in or about Salt Lake, where they could raise a few chickens and live in com-

parative comfort. Q. Well, what did she say about it? A. She said she was getting the place for them."

"She stated she was buying a home for her father and mother, and she took the title in her own name for fear they may lose it. That statement she made to me several times. She said she was buying it for her parents, and would keep the title in her own name, that was the statement she made to me."

Another witness, Berquist, testified to a conversation with Mrs. Park shortly after she bought the place, wherein she is alleged to have said "that she bought the place for her mother and father as long as they were living."

The most that can be said for this testimony is that it indicated Mrs. Park's intention of buying the place as a home for her mother and stepfather. None of them indicated an intention to give the property to them outright or to convey a life estate. The testimony is entirely consistent with plaintiff's theory that Mrs. Park merely gave a permissive use rather than the grant of a life estate. Another witness, Salin, an uncle of Mrs. Park, testified to a conversation alleged to have been had with her early in July, 1922, in Salt Lake City wherein he claims to have asked her the question. " 'What are you going to do with Mr. Nihlros, are you going to drive him out, or what?' She said 'I am not going to drive him out, I gave that place to him as long as he lives; and said good-bye to the place and take good care of it.' " The credibility of this testimony is somewhat shaken by uncontroverted facts. A few months previous, on July 22, 1922, Mrs. Park had made her will a copy of which was introduced in evidence in which she directed that her farm at Holladay, this property be sold and the proceeds distributed according to other provisions in the will. Nothing was said in the will about any life estate in Nihlros. The property was treated as her own. In the spring of 1922 Mrs. Park employed counsel in Salt Lake City to negotiate with and if necessary to proceed against Nihlros to obtain possession of the premises and pursuant to such employment on July 22, 1922, within two or three weeks

of the alleged conversation with Salin demand for possession was served on Nihlros and shortly thereafter suit was commenced in the city court by Mrs. Park with a view of obtaining possession of these premises. Her own conduct therefore speaks against the likelihood of her making a statement such as testified to by Salin. It is hardly likely she would have made such a statement at a time after she had employed counsel and proceedings were being prepared for the purpose of obtaining possession of the property. Another piece of evidence strongly relied upon by appellant is an undated letter received by Laura Nihlros in the summer of 1913, which is as follows:

"My Dear Mother: I have made arrangements with the man to go out to put in the bathroom fixtures which we picked out. I am enclosing a list so that you will know what is to be put up.

"When all the furniture is in the house and you are settled, you will have a lovely home of which you will have reason to feel proud and which will be yours as long as you both live.

"Your affectionate daughter,

"Josephine."

It is contended that this indicates that she had conveyed by oral grant or gift a life estate to both A. B. Nihlros and Laura Nihlros during the lives of each of them. It will be noticed that the letter was addressed to Laura Nihlros, and is not such a writing as itself meets the requirements of the statute. Indeed it is not contended that the grant was made by this letter. If the words are construed strictly, all that is indicated by this language would be a gift of possession to Laura Nihlros during the lives of both. Counsel for appellant cites *Bank of Greenbrier* v. *Effingham,* 51 W. Va. 267, 41 S. E. 143, wherein the words "so long as they both shall live," are construed to mean "so long as either of them shall live." These words were in a deed, and any other construction would have been impossible in view of the context. That case cannot assist us. There are in the letter no words of grant, and the declaration therein made is wholly consistent with a permissive use during the

pleasure of Mrs. Park, and cannot be said to be a conveyance or to indicate a prior conveyance of a life estate to A. B. Nihlros. The court therefore did not err in finding there was no gift or grant of a life estate from Josephine A. Park to A. B. Nihlros.

The findings of the trial court that the improvements were made wholly by Mrs. Park, and that there was no grant or gift of a life estate to A. B. Nihlros, find support in the following items of evidence: The letter above quoted, wherein Mrs. Park indicated that she personally had arranged for the placing of bath and kitchen fixtures in the house; large sums of money sent by her to Laura Nihlros and A. B. Nihlros and to the Granite Lumber & Hardware Company in the years 1913, 1914, and 1915, being the years during which the improvements were made, the aggregate amount of the checks thus sent by Mrs. Park being in excess of $6,000 of which checks to the amount of $1,462.64 were made directly to the Granite Lumber & Hardware Company; the testimony of Mr. Strong, the credit manager of the Granite Lumber & Hardware Company during the years mentioned, that Mr. Nihlros arranged with that company for the purchase of materials amounting to something between $2,000 and $3,000 and gave him to understand that the money to pay the bill was coming from his daughter in New York. As already indicated Mrs. Park made remittances approximately monthly and sometimes oftener during the entire ten-year period from 1913 to 1922; the inference being that, in addition to providing a home where her mother and stepfather could live in comfort and make a fair living from the use of the premises, she supplemented this by these monthly allowances. The will made by her in January, 1922, wherein she directs her property to be sold by her executor and the proceeds distributed in accordance with other provisions of the will clearly indicated her understanding at that time that the property belonged to her free from any claim of a life estate. Her conduct in employing counsel, and directing

that demand be made upon Nihlros to vacate and deliver possession and the bringing of action for the purpose of obtaining possession indicates her state of mind at that time. It is hardly conceivable that Mrs. Park, who had already spent approximately $16,000 during the nine years in providing a home and comfort for her mother and stepfather, would then seek to take the property away from the stepfather if in fact she had granted to him a life estate.

Another very significant fact is found in the payment of taxes on the place. In this state the obligation to pay taxes rests upon the life tenant. *Sheppick* v. *Sheppick,* 44 Utah 131, 138 P. 1169. Yet, the fact is that during the entire period of the occupancy by Nihlros he did not pay the taxes. It was not even claimed by him that he had paid any of them. The plaintiff sought to prove that the taxes had been paid by Mrs. Park during her lifetime and by her executor since. Objection was made to the offer and sustained by the court on the theory that no issue had been raised with respect to that question, and, in the absence of a claim by the occupant that he had paid the taxes, the law would presume all taxes had been paid by the owner of the title. The record is convincing that, instead of a consideration moving from A. B. Nihlros to Josephine A. Park for a life estate in the land, the entire tenure enjoyed by him was a bounty from Mrs. Park. There is nothing in the record, except such inferences as arise from the evidence, that possession was taken by Nihlros and improvements made and labor expended by him in reliance upon a gift of a life estate. There is evidence that Nihlros worked on the place and that valuable improvements were made under his direction and partly with his labor. All this, however, would be consistent with a permissive use. Appellant sought to show by the evidence which was excluded as incompetent under the statute that he expended sums of his own money, probably less than $3,000 in the making of valuable and permanent improvements. But it is shown that the rental value of the premises, which the court found to be in excess of $3,500,

exceeds the amount he could have testified he had expended, had he been allowed to answer with respect thereto. While this is not an infallible test, it is a circumstance to be used in determining whether the alleged donee, who made improvements, suffered loss or injury.

"If he had gained more by the possession and use of the land than he has lost by his improvements, or if he has been in fact fully compensated for the improvements, they will not be available to him as a ground for specific performance." *Price* v. *Lloyd,* supra.

In view of the whole record, we can see no injustice or fraud practiced against A. B. Nihlros by the executor of the estate pleading and relying upon the statute of frauds (Comp. Laws 1917, § 5811). The equities arising out of the cause are in favor of the estate rather than in favor of appellant.

The judgment of the district court is affirmed, with costs to respondent.

CHERRY, C. J., and ELIAS HANSEN, STRAUP, and EPHRAIM HANSON, JJ., concur.