LIGHTNER *et al.*

*v.*

LIGHTNER *et al.*

(*Supreme Court of Appeals of Virginia, Nov. 21, 1895.*)

[23 S. E. Rep. 301.]

### Equity Practice—Parol Gift of Land—Enforcement—Sufficiency of Evidence.

Though a court of equity will compel the conveyance of the legal title of land claimed under parol gift, supported by consideration, by reason of which the donee has been induced to alter his condition and put valuable improvements on the land, where the donee claims the gift was on certain conditions, and the evidence as to the terms of the contract and as to the acts of part performance relied on is not satisfactory, and does not establish the elements of the donee's demand by a clear preponderance of proof, but leaves the whole controversy doubtful and obscure, conveyance of the title will not be decreed.

### Same—Same—Same—Same—Case at Bar.

A bill by L., for the enforcement of a parol gift of a farm by his father, alleged, and the evidence showed, that L. went on the farm as a renter from his father, and continued as such about four years, when his father, learning that he intended to buy another farm, said, "Do not do that; stay where you are, and improve the land. I give you that farm, only requiring you to pay $3,500,"—and that, relying on such promise, he remained on the farm, cultivating and using it as his own, and making on it valuable *improvements*; but the evidence showed that his father continued to pay the taxes, and that L. frequently admitted that his father owned it, and he lived on it as a renter, with the option to buy. It did not appear that any part of the $3,500 was paid: *held*, that a conveyance to L. would not be decreed.

Appeal from circuit court, Augusta county; William Mc-Laughlin, Judge.

Action by Lightner and others against John A. Lightner and others, for the settlement of the estate of Alexander B. Lightner, deceased, in which defendants John A. Lightner and the widow and children of Charles A. Lightner, deceased, filed cross bills. From a decree confirming a report of a commissioner in chancery denying plaintiffs in the cross bills any relief, they appeal. Affirmed.

*Patrick & Gordon,* for appellant.

*Geo. M. Cochran, James Bumgardner,* and *R. P. Bell,* for appellees.

KEITH, P., delivered the opinion of the court.

This was a suit brought in the circuit court of Augusta county by certain of the children and heirs at law of Alexander B. Lightner for the settlement of his estate, real and personal, for the payment of his debts, and the division of what remained among his heirs and distributees. John A. Lightner and the widow and children of Charles A. Lightner, who, with others, were parties defendant to this bill, filed their answers, which are taken as cross bills, in which they set out that Charles A. Lightner, in his lifetime, had been, by his father, A. B. Lightner, put in possession of a tract of land of 280 acres, near West View, in Beverly Manor district, Augusta county, and that the said tract had been for years in the exclusive possession and use of their father, Charles A. Lightner ; that Alexander B. Lightner was a man of large property; that Charles A. Lightner had remained with him and worked for him without compensation for a number of years after he attained his majority ; that he had received no compensation therefor, always under the promise from the father that those years of labor by him would be liberally compensated ; that in 1879 Charles A. Lightner, the father of the defendants, was renting the farm in question from Robert G. Bickle, then its

owner, his purpose being to become ultimately its purchaser. In this attitude of affairs, Alexander B. Lightner bought the farm in his own name from Bickle for the sum of $9,000, saying to Charles: "I have bought this farm for you. It is your farm. I owe you for seven years' labor, which, with the accumulated interest, amounts to a very considerable sum, and I am going to give you part of it, and the residue I want you to pay for. Go ahead with the farm. It is yours. I want you to pay me $3,000 as fast as you can make the money. You bring it to me until you have paid the $3,000, and when it is all paid, I will make you a deed to the farm." The widow and children of Charles A. Lightner aver that he, relying upon his father's promise, accepted this proposition, and acted upon it. The contract was never reduced to writing. It is claimed, however, that Charles went on and used and occupied the farm as his own ; that he made and saved money, and was a thrifty and prosperous man ; that at various times he paid large sums to his father, and made costly and valuable improvements upon the place. John A. Lightner answered, and his answer is also taken as a cross bill, and in it he claims that, upon coming of age, in 1879, he continued to live and work with his father until March, 1881, when he went to Maryland and engaged in business for himself. While there his father wrote to him to come home, urging him to come on account of his sickness. He returned, and his father told him that all the other boys had left him and were in business for themselves, and he must remain at home and work and manage the farm, and he would see that everything was made all right; that an advantageous proposition was made to him, which he declined, although it was flattering and lucrative, in order to accept his father's offer. In December, 1881, John A. Lightner was married, and shortly thereafter his father moved away from the Buffalo Branch farm, upon which they were living together, and left his son John A. Lightner upon the farm in charge of it as a renter. Becoming dissatisfied with this arrangement, John A.

Lightner, in 1886, determined to buy a place known as the "Zirkle Farm," and settle upon it, so that he might get "the proceeds of his own labor and skill, and make some provision for his family." Upon informing his father of his purpose, he represents that his father said to him : "No; do not do that. Stay where you are and improve that land. I give you that farm, only requiring you to pay me $3,500." Upon this promise and undertaking upon the part of his father, he abandoned all idea of moving away and establishing himself elsewhere, and since that time he claims that, with the full consent and knowledge of his father, he has held and used the land as his own ; that he has expended considerable sums of money on improvements upon the farm, such as removing rock, putting up fencing, planting orchards, building barns and stables, and other improvements. The father died without ever having executed deeds to these several parcels of land now claimed by his son John A. and by the widow and children of his son Charles, and the other children and heirs at law of A. B. Lightner utterly deny that there was any such contract between their father and his two sons. Upon the issues thus made, a great number of depositions were taken before a commissioner in chancery, who has filed a voluminous report, in which he discusses the evidence and the law applicable thereto, and arrives at the conclusion that the plaintiffs in the cross bills have not established their case, and are not entitled to the relief claimed.

The law is well settled, by a series of decisions in this court, "that a court of equity will compel the conveyance of the legal title of land claimed under parol gift, supported by a meritorious consideration, by reason of which the donee has been induced to alter his condition and make expenditures of money in valuable improvements on the land." Burkholder v. Ludlam, 30 Grat. 256. And the demand for specific performance may be set in an answer to a bill asking partition, but it is still an application for equitable aid, and is to be governed by settled

rules appropriate to bills for specific performance. Booten v. Scheffer, 21 Grat. 474. In bills for specific performance he who seeks the exercise of this extraordinary jurisdiction must show a contract certain and definite in its terms, that he himself has performed his part of the agreement, and, where part performance of a verbal contract is relied upon, the acts of performance must be shown to have been done under and by reason of the contract relied upon. The burden of proof is upon those seeking specific execution, and it is for them to show, by preponderance of evidence, every fact necessary to induce the court to grant the relief prayed for. In the light of these principles, let us consider, first, the case made by Charles A. Lightner. It appears from the evidence that he attained his majority in 1871, was married in 1875 or 1876, and that in 1879 he came into possession of the farm which his widow and heirs at law now claim, as a tenant of Robert G. Bickle, who then owned it. There is some controversy as to the date of the purchase by A. B. Lightner of this tract. The commissioner states that it was purchased from Bickle on the 1st of May, 1882, and as authority therefor he refers to Deed Book No. 102, page 195. By counsel for the appellants it is claimed that the purchase was really made in 1880, though the deed to A. B. Lightner was not executed until a later period, and in support of his contention refers to the same record. As the deed itself is not introduced, we are unable to determine this controversy between counsel and the commissioner. Let us assume, however, that the fact is as claimed by the appellants. It will then appear that Charles A. Lightner was in possession of the property in question as a tenant of Robert G. Bickle, when his father, in March, 1880, purchased it. It is claimed, as we have seen, that, at the time, A. B. Lightner stated to his son that he intended to give him the farm in reward for the services which he had rendered, subject only to a charge, variously stated,—by some of the witnesses at $3,000, and by others at $4,000. No period is fixed for the payment of this money.

It is alleged that a greater part of it was paid during the years 1880, 1881, and 1882. But the evidence filed in support of this contention only shows that, at various times during those years, commencing on the 23d day of March, 1880, A. B. Lightner received sums of money from Charles A. Lightner for which he executed his bonds ; as, for instance, on the 23d day of March, 1880, we find this bond : "One day after date I promise and bind myself to pay C. A. Lightner $300.00 borrowed money, for value received. Witness my hand and seal this 23rd day of March, 1880. A. B. Lightner. [Seal.]" From that time down to the 23d day of March, 1882, various sums of money appear to have been received by A. B. Lightner from his son Charles, for every one of which an obligation similar to the above was given, except that, on April 12, 1881, we find the receipt of $321 acknowledged in the following terms: "Received of C. A. Lightner $115.00 in cash, also $206.00 on E. A. Fulcher corn, delivered him, which I am to account to him for on settlement." These papers, on their face, certainly do not bear out the claim of the appellants, that these sums of money were payments upon the land in execution of the contract set out in the bill. They are simply evidences of debt from A. B. Lightner to his son Charles. There is, however, the testimony of many witnesses that A. B. Lightner in his lifetime stated that this farm had been purchased for his son Charles ; that Charles had been a dutiful and faithful son; that he had rendered valuable services after he became of age, for which his father intended to reward him ; and that, upon the payment of $3,000, according to some of the witnesses, and $4,000, according to others, it was his purpose to make to him a deed for the farm of which he was then in possession. It appears, without doubt, that Charles was in possession of the farm, as is seen, from a date prior to its purchase by A. B. Lightner until his death in 1892, that he used and enjoyed it as his own, and that he made many valuable improvements upon it. Upon the other hand, it is shown that, during all this time, the taxes

were paid by A. B. Lightner, that the insurance was taken out in his name, and the premiums paid by him, and that he openly and continuously asserted that the land was his.    This claim of ownership was made so openly and so notoriously that it is impossible to believe but that a knowledge of it must have come to C. A. Lightner.    Without deciding to what extent, if any, the acts and declarations of A. B. Lightner with respect to his interest in the property in controversy are competent evidence under the peculiar circumstances of this case, it will not be disputed that what C. A. Lightner said and did may be considered in derogation of the title now claimed by appellants ; and from these it seems that Charles himself did not consider that he had any such binding contract with his father as could be enforced in the courts.    See report of the commissioner at page 57, where the evidence as to the admissions of Charles A. Lightner in disparagement of his claim of title is set out. Upon this branch of the case it must be conceded that the evidence as to the terms of the contract, and as to the acts of part performance relied upon by the appellants, is not satisfactory, and does not establish the essential elements of their demand by a clear preponderance of proof, but, on the contrary, leaves the whole controversy doubtful and obscure.

The case of John A. Lightner presents less difficulty.    His case, as stated in his answer, is : That he entered upon the farm which he now claims as a renter from his father, and continued as such until about 1886, when, it having come to the knowledge of his father that he contemplated the purchase of the Zirkle farm, his father said to him : ''No ; do not do that. Stay where you are and improve the land.    I give you that farm, only requiring you to pay $3,500.''    That, in reliance upon this promise, he did remain upon the farm, cultivating and using it as his own, and making upon it costly and valuable permanent improvements.    That he did live upon the farm, and that he did improve it, are fully proven ; but, on the other hand, it is shown, as we have seen, that he entered upon the

land as a renter from his father ; that his father continued to
pay the taxes upon the land, and by many witnesses it appears
that John A. Lightner himself admitted, on several occasions,
subsequent to 1886, that his father was still the owner of the
land, and that he lived upon it as a renter with the option to
purchase.    Indeed, as the commissioner observes, upon page
52 of his report, a close scrutiny of the deposition of John A.
Lightner, independent of his own admissions, would lead to the
same conclusion.    There is no pretense in this case that there
was any payment of the purchase money.    There was no change
of condition, prejudicial to John A. Lightner, induced by the
alleged conduct of his father, and there is, to our mind, abso-
lutely nothing that brings his case within the operation of the
principles announced in Burkholder v. Ludlam, above cited,
or Halsey v. Peters' Ex'r, 79 Va. 60.    As was said by Judge
Lewis, in Rice v. Hartman, 84 Va. 256, 4 S. E. 621 : ''The
temptation to set up claims against the estates of dead men, like
the one asserted in the present case, is very great,   *   *   *
and when such claims are asserted, they should be strictly
proved.''    And, to quote from an opinion of Justice Strong in
Graham v. Graham's Ex'rs, 34 Pa. St. 481 :  ''The danger
attendant upon the assertion of such claims requires that a tight
rein should be held over them by making the quality, if not
the sum, of the proof, a subject of inspection and governance
by the court, and by following strictly the rule prescribed.''
Upon the whole case, we are of opinion that there is no error
in the decree complained of, and it is affirmed.