## PRICE v. LLOYD.

No. 1719. Decided August 16, 1906 (86 Pac. 767).

1. SPECIFIC PERFORMANCE—TRIAL—FINDINGS BY COURT—CORRESPONDENCE TO ISSUES. In a suit for specific performance of a contract to convey land to plaintiff, findings by the court giving plaintiff a right to a conveyance on a verbal gift, ratified by possession, violated the rule that the findings must correspond to the issues.

2. SAME—PAROL GIFT. In a suit against a decedent's estate to enforce a conveyance of land to plaintiff, the court found that a verbal gift was made; that plaintiff took possession and expended money on the

premises, paid taxes, and worked for deceased, performing all acts requested of her. There was no finding as to the amount expended, or that the improvements were permanent or valuable, no finding as to the amount of taxes paid, and it was not found that the acts done by plaintiff were in pursuance of any agreement. *Held,* that the findings were insufficient to support a judgment enforcing a parol gift.

3. SAME. A verbal agreement to convey land may, if part performed, be enforced in equity.

4. SAME—ORAL CONTRACT TO CONVEY. Acts done prior to a verbal contract to convey land are never a part performance upon which to base specific performance of the agreement.

5. SAME—IMPROVEMENTS. The making of valuable or substantial improvements by the donee in possession, or the doing of other analogous acts which would render a revocation inequitable, is essential to the enforcement of a parol gift of land.

6. SAME—EVIDENCE. A parol gift or agreement to convey land must be shown by definite, unequivocal evidence.

7. SAME—CONSIDERATION. Equity will not enforce a mere voluntary agreement or mere parol gift of land; but a valuable consideration is necessary.

8. SAME—EVIDENCE—SUFFICIENCY. In a suit to enforce a parol gift of land to plaintiff from a decedent, evidence held insufficient to show that improvements and expenditures made by plaintiff while in possession were made in consequence of a gift or were of such value as to avoid the statute of frauds.

— APPEAL from District Court, Salt Lake County; C. W. Morse, Judge.

Suit by Martha Lloyd Price against John H. Lloyd, as executor of the will of William Lloyd, deceased. From a judgment for plaintiff, defendant appeals.

REVERSED.

*Thomas & Maycock* and *J. E. Frick* for appellant.

*D. S. Wenger* and *Arthur Brown* for respondent.

### APPELLANT'S POINTS.

"If a party would take a case out of the statute of frauds upon the ground of part performance, it is indispensable that the parol contract, agreement, or gift should be established by clear, unequivocal and definite testimony, and the acts claimed to be done thereunder should be equally clear and definite and referable exclusively to the said contract or gift." (*Truman v. Truman* [Iowa], 44 N. W. 721; *Williamson v. Williamson,* 4 Iowa 281.)

"To constitute a valid gift of real estate there must be a present intention to give an actual parting with the right of ownership certainty of the estate given and a taking possession in pursuance of the gift."

"A parol gift of land is not consistent with any subsequent acts of control or ownership by the donor; and, if such are proved, the court should give a peremptory instruction to the jury against the validity of the gift." (*Collins v. Collins*, 2 Grant Cas. 117; *Lynch v. Lynch's Heirs*, 23 La. Ann. 242.)

"A parol gift of land will not be sustained unless the donee has made valuable improvements on the land on the faith of the gift." (*Montgomery v. Carlton*, 56 Tex. 361.)

"When one attempts to make a parol gift of land, and the purchaser enters and makes improvements not exceeding the value of the rent, persons who inherit from the donor are not estopped to sue to recover the land." (*Wooldridge v. Hancock*, 70 Tex. 18, 6 S. W. 818; *Cooke v. Young*, 2 Utah 254.)

"In a suit of this character, unless the contract stated in the bill is established by a clear preponderance of evidence, the court will not enforce it. If the evidence is conflicting and it is not clear that a contract was in fact made, a bill for specific performance will be dismissed." (78 Va. 700; 5 Munf. 185; 14 W. Va. 397; *Gallagher v. Gallagher*, 5 S. E. 297.)

The donee must have taken possession pursuant to, and in reliance upon, the gift, and must have made valuable and lasting improvements. To simply have made the property more habitable or convenient for use, by making temporary improvements, is not a matter from which equities arise that will permit the donee to enforce the gift; moreover, the improvements made must exceed the value of the use of the property. (*Burns v. Landers* [Cal.], 40 Pac. 162; *Asbury v. Hucklin*, 81 S. W. 390; *Kinsey v. Murray*, 71 S. W. 197; *Truman v. Truman*, 44 N. W. 721; *Anson v. Townsend* [Cal.], 15 Pac. 49; *Anderson v. Scott*, 8 S. W. 235; *Wooldridge v. Hancock*, 6 S. W. 818; *Gallagher v. Gallagher*, 5 S. E. 297; *Schoomaker v. Plummer*, 29 N. E. 1114; *Harrison v. Harrison*, 15 S. E. 89; *Shirley v. Shirley*, 27 Pac. 1097;

*Wilson v. Wilson,* 68 N. W. 910; *Lightner v. Lightner,* 23 S. E. 301; *Railroad v. Knowles,* 11 Atl. 250; *Zallmanzig v. Same,* 24 S. W. 946; *Lich v. Lich,* 46 N. W. 764; *Green v. Groves,* 10 N. E. 404; *Lewis v. North,* 87 N. W. 314.)

"It must appear that the loss of his improvements would be a sacrifice to the purchaser. If therefore he has gained more by the possession and use of the land or if he has been in fact fully compensated for the improvements they will not be available to him as a ground for specific execution." (Ibid., Browne, Statute of Frauds, secs. 487, 491, 701; Beach on the Modern Law of Contract, pp. 850-1.)

"Possession of vendee holding under parol execution contract of purchase is not adverse to that of his vendor until he has performed the conditions thereof or repudiated the latter's title." (1 Cyc., 1045-6-7-8; 1 A. & E. Ency. of Law [2 Ed.] p. 800; 14 A. & E. Ency. of Law, 1042; Waterman's Specific Performance of Contracts, 271; 22 N. E. 219.)

RESPONDENT'S POINTS.

1. Where the gift is past and *in praesenti.* The gift is made not upon any condition and a donee relies upon it and goes into possession and acts upon the faith of that gift.

2. When a gift is upon a condition yet to be performed. Like conditional sales of land. In this class of cases the donee must show performance of conditions, but may claim adversely. Whenever a gift is established falling under either of these heads it will be enforced in a court of equity. (Pomeroy on Contracts, secs. 130, 131, 144, *et seq.; Neale v. Neals,* 9 Wall. 1; *Riggles v. Erney,* 154 U. S. 251; *Wells v. Wells,* 7 Utah 75; *Brinton v. Van Cott,* 8 Utah; *Brown v. Sutton,* 129 U. S. 238; *Dozier v. Matson,* 94 Mo. 329; *Freeman v. Freeman,* 43 N. Y. 34; *Lobdell v. Lodbell,* 36 N. Y. 327; *Drun v. Stephens,* 94 Ind. 181, 33 Am. Dec. 430, 53 Am. Dec. 342, and note; *Potter v. Smith,* 35 N. W. 916; 68 Mich. 212; *Karren v. Rainey,* 83 Pac. 334.)

"Where one enters upon land, claiming title under parol gift only and holds exclusive possession, such possession is adverse, and if continued for the period of limitation, bars

the owner's right of entry and of action." (Opinion of Shaw, C. J., 6 Met. 337; *Shafer v. Hauser,* 70 N. W. [Mich.] 136; *Campbell v. Braden,* 96 Penn. St. 388; *Stewart v. Duffy,* 116 Ill. 47; *Rannels v. Rannels,* 52 Mo. 114; *Martin v. Railroad,* 21 Atl. Rep. 740.)

STRAUP, J.

1. This action was brought by plaintiff and respondent against the executor of the last will and testament of William J. Lloyd, deceased, to have decreed a specific performance of a parol agreement or gift of land. Upon findings made by the court a decree was rendered in favor of plaintiff, from which the defendant prosecutes this appeal.

It is alleged in the complaint that the plaintiff was a niece of the deceased, that she had married his son; that for the last 21 years of his life the deceased was unmarried; that prior to July, 1891, the plaintiff did acts of kindness for the deceased, and that in consideration thereof, and in consideration of future obligations on the part of plaintiff, "to wit, that she would continue to attend to his wants and assist him," the deceased, in July, 1891, "said to her that he would give her the lot which she now occupies [fully described] ; that the said terms of the contract were accepted by her and her father-in-law as a promise to convey for the services she had done and for the services that she was to do, and the said deceased said to her: 'Move in, take possession, and repair and fix it up. It is yours. I want to retain the title until I die, but it shall be yours from this on'—thus making a contract the consideration of which was that the plaintiff should protect and look after said deceased and that he should provide her with that home and property and deed it to her or will it to her." It was further alleged that plaintiff had washed and mended clothes for the deceased, and had made bread and cooked for him, and that she had fully complied with the contract on her part; that she and her husband had moved upon said premises and had expended $2,000 thereon in improving the same, and that the plaintiff had furnished the deceased money with which to pay the taxes each year; that when the will of the

deceased was produced it did not provide that the property belonged to the plaintiff; and that she had no paper title, but that she was in possession and had been in possession since July, 1891, and has held the property adversely to the said William J. Lloyd and to his heirs. After finding that the parties were related to each other as in the complaint alleged, the court found: "That the plaintiff had cared for the deceased in sickness and in health; that on July 2, 1891, the deceased, William J. Lloyd, gave to the plaintiff by verbal gift the premises involved in this suit; that no writing was made therefor, but plaintiff entered upon the possession and she and her husband, Fred W. Price, expended money thereon as owners of said property and not as tenants; that said possession was taken in pursuance of said promise, and would not have been taken except for said promise that the property should belong to said plaintiff; that the expenditures of money on said premises were made in reliance upon such promise and gift; that verbally the deceased, William J. Lloyd, gave the property described in the complaint to the plaintiff in this case; that she performed all acts and duties and requests made upon her, she was a daughter to him both before and after the gift as long as he lived, she worked for him, washed for him, and did all those things for him which a daughter can do; that she paid taxes on said property to the said deceased." From these facts the court made the following conclusions of law: "That the donation by verbal gift ratified by possession entitles the plaintiff to a decree for the property; that the plaintiff herein acquired no title, right, or interest in and to the premises in controversy by virtue of the statute of limitations or adverse possession, and the decree of ownership in this action is based solely upon the oral gift of said premises as set forth in these findings."

It will be observed that in the complaint plaintiff's right to have specific performance of the conveyance is grounded upon a contract of promise of the deceased to convey the land in consideration of services rendered and to be rendered by the plaintiff, while the findings and conclusions gave plaintiff such right alone upon the fact of a verbal gift ratified by

possession. It is elementary that the findings must respond to and be within the issues raised by the pleadings. (2 Spelling, New Tr. & Ap., sections 591-6.) By comparison it is readily seen that the findings do not respond to the allegations of the complaint, nor are the findings sufficient to support the judgment. While there is a finding that a verbal gift was made, and that the plaintiff entered upon the possession, and that she expended money on the premises as owner, no finding is made as to the amount of money expended by her, nor that it was expended in improving the property, nor any finding as to the improvements being beneficial to the land, or being valuable or permanent. A finding is also made that plaintiff "paid taxes on the property to the deceased," but no finding as to the amount or when paid, nor as to whether it was all or only a part of the taxes. The finding that she "expended money and paid taxes" on the property might be wholly consistent with the fact that she had only paid and expended the sum of $1. While a finding is also made that plaintiff performed all acts and duties and requests made upon her, that she worked for the deceased, washed for him, and did all things which a daughter could do, no finding is made that she did any of those things because of anything said or done, or agreed to be done, by the deceased, nor because of anything agreed by her to be done, nor that she had agreed or was required to do anything. No sufficient, or any, facts are found from which a court of equity is justified in drawing the conclusion that to permit the statute of frauds to be interposed and not to enforce the verbal gift works an injustice and a fraud upon the plaintiff, the basic principle upon which the enforcement of such a verbal contract or gift is founded. For these reasons, and because of the principles of equity applicable to this kind of a case, these findings are wholly insufficient to support the judgment.

2. This case, however, being one in equity, we have concluded to review the evidence to ascertain if it is sufficient to justify findings in harmony with and responsive to the complaint, and sufficient to support the judgment. The evidence shows that the plaintiff married the

deceased's son about the year 1876, and had three children, issue of the marriage. In 1882 the wife of the deceased died, when the plaintiff and her husband moved into a portion of the house where the deceased lived. Thereafter, just when is not shown, the plaintiff was divorced from her husband, and she and her children continued to live at the same place. In January, 1891, the plaintiff married one Fred Price, and in July of the same year they moved upon the premises in question, a house and lot in Salt Lake City, about a block from where the deceased lived, and of the value of about $5,000, the title of which then was and ever since has been in the name of the deceased. They continued to live there until the death of the deceased in 1903. A number of witnesses, on behalf of the plaintiff, testified to statements and admissions made to them by the deceased on different occasions, between the years 1891 and 1903. One of them testified that "he [the deceased] gave me to understand—told me she [the plaintiff] owned the property, and I would have to see her in regard to the right of way." Another, speaking of a conversation had with the deceased, testified:  " 'Why don't you sell some of your property and live happy all the rest of your life and give up work ?' and he said, 'I could not do that.' I said: 'How is Matt [plaintiff] getting along down there; still on her place ?' He said, 'Yes, that belongs to Matt when I am gone.' " Another testified that the deceased "told me that he wanted Mattie to have this property when he died." Another, that the following conversation was had with the deceased.  " 'Do you rent this all to Mrs. Price ?' and he said, 'No, I gave it to Mattie.' He said that he gave it to her for a home. Something about a home, I know he said, but I can't recall the exact words. He didn't say anything about a deed. I understood he simply said he had given it to Mattie and it was her home." Another that the deceased said:  " 'I shall furnish Mattie a home for herself and children as long as I live;' that he always had to provide a home for her and her children, and it was his intention to provide a home for them." Another that the deceased said: " 'Well, it is hers.' I said: 'Hers, yes; but have you given

it to her?' He says: 'Yes, I have given it to her. She has had it for many years now, and when I am gone there will be a deed or papers left so that she will have no trouble.'" Another that the deceased said: "'Now, this is Mattie's so long as she lives, if she will pay the taxes.' He said: 'This is Mattie's home,' Matt was so good to him. It was Matt's so long as she lived, if she would pay the taxes." Other witnesses testified to similar statements made by the deceased to the effect that the property belonged to the plaintiff, that he had given it to her, and that she had been good to him. Witnesses also testified that prior and subsequent to July, 1891, the plaintiff had, on different occasions, done washing, cooking, and baking for the deceased, but the amount of such service and the frequency of it, is left very indefinite and uncertain, except that she did more or less of it off and on from the time of the death of the wife of the deceased, to the time of his death. But the evidence does not show that any of these things were done because of anything said or done by the deceased, or because of any agreement on his part to convey or give the property to her. Nor are there any facts or circumstances from which it may be inferred that they were done in consequence or in pursuance of a gift or promise to convey. This evidence does not support, nor is there any evidence in the record to support, the allegation in the complaint that a contract or agreement had been entered into between plaintiff and the deceased by the terms of which he had agreed to convey or will the property to her in consideration of services rendered or to be rendered by her for him.

There is also testimony, on behalf of plaintiff, showing that between the years 1891 and 1903 there was placed on the premises a shedlike barn, 16x16, with slanting board roof, and built out of common lumber, and valued at from $45 to $90; chicken coops valued at $20; about 12 1-2 rods of Burton-Gardner lath and wire fence, 10 rods of picket fence, and about 125 feet of wire netting fence, all valued from $100 to $200. As to some of the fencing the evidence is not certain as to whether it was placed upon the premises and paid for by plaintiff and her husband, or by the deceased and others.

It is also shown that plaintiff and her husband expended about $200 or $300 in papering rooms of the house and in doing inside painting; that they occupied only a portion of the building and that other portions were occupied by tenants, some of whom paid rent to the plaintiff and some to the deceased. Except the testimony of witnesses who testified that the deceased "told me that Mrs. Price paid the taxes," and "that Mattie raised her portion of the taxes," there is no evidence that plaintiff paid any of the taxes, or that she furnished any money with which to pay them, between the years 1891 and 1903, except, perhaps, one year, as testified to by plaintiff's son; that he saw the plaintiff hand some money, which he thought was about $80, to the deceased, and that the plaintiff and the deceased said it was tax money; but he did not know whether it was money that deceased had advanced to plaintiff or not. Considerable evidence was introduced on behalf of the defendant showing that the improvements referred to were worth not to exceed $75 or $100; that while the plaintiff was occupying the house, and in the year 1900, the deceased caused the roof to be shingled, and paid for the material and labor, and that he caused to be made and paid for other repairs about the house; that the deceased collected rents from persons living in portions of the same house occupied by the plaintiff; as to admissions of the plaintiff that she paid rent for the premises to the deceased; that some of the fencing was placed on the premises under the direction of the deceased, or by neighbors, as party lines; that the deceased paid all the taxes between the years 1891 and 1903; that since the death of his wife, the deceased lived alone, and that his sons and their daughters, other than the plaintiff, had cooked, baked, washed, mended clothes, and cared for him, and that on different occasions he lived with some of them several weeks and months at a time; and that the rental value of the property occupied by plaintiff was from $10 to $15 per month. The deceased, at his death, left a last will and testament, by the terms of which he devised all his real estate, consisting of several parcels including the property in

question, to his heirs, a quarter of his estate being devised and bequeathed to the children of the plaintiff.

3.    It of course is readily conceded that a verbal gift or parol agreement to convey land is within the statute of frauds, and at law a nullity.. (Comp. Laws 1888, section 2831 and section 3918, subd. 5; Rev. St. 1898, section 1974.) However, the doctrine has long been established that a verbal agreement, if part performed, can, notwithstanding the requirements of the statute, be enforced by a court of equity. But the foundation of the doctrine is fraud inhering in the consequence of setting up the statute.   The rule is well stated by Pomeroy in his work on Specific Performance of Contracts (page 144):

"When a verbal contract has been made, and one party has knowingly aided or permitted the other to go on and do acts in part performance of the agreement, acts done in full reliance upon such agreement as a valid and binding contract, and which would not have been done without the agreement, and which are of such a nature as to change the relation of the parties, and to prevent a restoration to their former condition and an adequate compensation for the loss by a legal judgment for damages, then it would be a virtual fraud in the first party to interpose the statute of frauds as a bar to a completion of the contract, and thus to secure for himself all the benefit of the acts already done in part performance, while the other party would not only lose all advantage from the bargain, but would be left without adequate remedy for his failure or compensation for what he had done in pursuance of it.   To prevent the success of such a palpable fraud, equity interposes under these circumstances, and compels an entire completion of the contract by decreeing its specific execution."

The principle as stated by Pomeroy is the established doctrine. (Pomeroy, Eq. Jur. [3 Ed.], section 1409; 2 Story, Eq. Jur. [13th Ed.], section 761; *Glass v. Hulbert,* 102 Mass. 34, 3 Am. Rep. 418.)   It is also well settled that acts done prior to the contract, since they are neither in pursuance nor in the execution of it, are never a part performance upon which to base a specific performance of the agreement by a court of equity; that the contract must also be complete and certain in its terms; and that

"This element of completeness must exist in every contract which can be specifically enforced, whatever be its external form, whether written or verbal, whether embodied in the memorandum required by the statute of frauds, or rendered obligatory by part performance, or by any other act which may obviate the prohibitions of that statute." (Pomeroy, section 145.)

It is also the rule that the making of valuable, or substantial, or beneficial improvements by the donee in possession, or the doing of other analogous acts which would render a revocation and refusal to complete inequitable, is essential to the enforcement of a parol gift of land. It is also essential that the parol agreement or gift should be established by clear, unequivocal and definite testimony, and the acts claimed to be done thereunder, should be equally clear and definite and referable exclusively to the contract or gift.

Tested by these principles we are clearly of the opinion that the evidence is insufficient to justify a decree granting to the plaintiff a legal title to the property. While some of the evidence shows merely a gift in future, there is considerable and persuasive testimony that the deceased, on different occasions, and to different persons, spoke of the property in question as belonging to the plaintiff and that he had given it to her. But such acts are not sufficient to justify a court of equity in decreeing a conveyance of the property. Equity will not enforce a mere voluntary agreement or mere parol gift of land. In addition thereto equity demands a valuable consideration, and also a showing that in consequence of the gift the donee has done something, whereby a refusal to grant specific performance is not merely a denial of rights which were intended to be conferred, but is an infliction of an injustice upon him. Conceding that the evidence shows a promise on the part of the deceased to convey or will the property to plaintiff, or that he had made a parol gift of it to her, we look in vain for any evidence as to the terms, scope, and conditions of, or consideration for, the promise or gift. Yet the authorities are unbending that a court of equity will not decree specific performance of a parol agreement or gift of land, when the contract lacks certainty and completeness and when

31 Utah—7

not founded upon a valuable consideration. It cannot be said of this case, as was said in the case of *Brown v. Sutton*, 129 U. S. 238, 9 Sup. Ct. 273, 32 L. Ed. 664, cited by the respondent:

"Here is at once the promise and the consideration for it, amounting to an agreement stated in Mr. Kenyon's [the deceased's] own language, with all the clearness of detail necessary to a contract."

While it is not essential that all the elements of a contract should be detailed as having been formally declared or expressed by the parties, yet from all the facts and circumstances as disclosed by the evidence the chancellor must be able to read sufficient terms and conditions to make a definite and complete contract and one founded upon a valuable consideration.

Looking into the evidence with reference to improvements made as a basis for a consideration and part performance, we are of the opinion that the improvements are not of such value or character as to take the case out of the operation of the statute. Furthermore the evidence does not satisfy us with that clearness and persuasion required by the authorities that they were made in consequence of a gift, or in pursuance of a promise to convey, or that they are otherwise referable thereto. Indeed, there is little or no direct evidence proving such fact, nor is there any circumstance from which it may reasonably be inferred. Because of their general character such fact cannot fairly be inferred from the mere circumstance of the improvements having been made. Generally speaking, the improvements, especially the papering of the rooms, the inside painting, much of the fencing, the chicken coops, and the like, are not such as have a substantial or permanent character, or as are beneficial to the freehold; but they are such as are merely for the ordinary convenience and comfort in the use and occupation of the premises. They are no more than might ordinarily have been made by a tenant at will, and are as consistent with some interest in the premises less than a freehold as with an estate in freehold. There are also authorities to the effect that where the improvements do not exceed the rental value of the premises

they will not be regarded as of such a substantial value and character as to constitute part performance so as to take the case out of the statute. (*Wooldridge v. Hancock*, 70 Tex. 18, 6 S. W. 818; *Schoonmaker v. Plummer* [Ill.], 29 N. E. 1114; *Buhler v. Trombly* [Mich.], 102 N. W. 647; *Burns v. Daggett*, 141 Mass. 368, 6 N. E. 727; *Poullain v. Poullain*, 76 Ga. 420, 4 S. E. 92; Pom., Spec. Per. Cont., sections 128, 129.) Here it is shown that the rental value of the land far exceeded the improvements made upon the premises. While such fact alone may not be the test in determining the character and permanency of the improvements, still it is a strong circumstance in determining whether the purchaser or donee, who made the improvements suffers a loss or injury, if the contract is not specifically performed. For, as the authorities say, it must appear that the improvements, relied upon as part performance are of a character permanently beneficial to the land and involving a sacrifice to him who made them because and in reliance of the gift. If he had gained more by the possession and use of the land than he has lost by his improvements, or if he has been in fact fully compensated for the improvements, they will not be available to him as a ground for specific performance. (*Gallagher v. Gallagher* [W. Va.], 5 S. E. 297; Browne, St. Frauds, sections 487, 891.)

But it is strongly urged that a gift followed by actual possession is sufficient to constitute part performance, without valuable or any improvements having been made. From the conclusions of law made by the trial court, this view seems to have been adopted by it. Possession of land, under a verbal contract founded upon a valuable consideration, when delivered to the vendee or taken by him with the knowledge and consent of the vendor, may, in some instances constitute a part performance, such as where the relations of the parties have been so altered as to prevent their restoration to their former condition, and that it would be a virtual fraud to allow the defendant to interpose the statute as a defense, and thus to secure to himself the benefit of what has been done in part performance or to inflict an injustice upon the vendee.

The possession, however, must not only be actual and open, but it must also be definite and exclusive, and not concurrent with the vendor. It must indicate the commencement of a new estate or interest. Here the evidence on behalf of the plaintiff as well as of the defendant shows that during plaintiff's occupancy portions of the premises were occupied by tenants who paid rent to the deceased as the recognized owner and landlord. While there is evidence showing that some of the tenants, on different occasions, paid rent to the plaintiff, yet the undisputed evidence shows that other tenants paid rent to the deceased. When, therefore, some of the tenants paid rent to the plaintiff and some to the deceased, the circumstance tends to show a concurrent rather than an exclusive possession on her part. The plaintiff, however, has wholly failed to show any consideration for a parol gift of the land, and without a valuable consideration possession alone is not sufficient to take the case without the statute. Pomeroy, section 130, in his work on Specific Performance of Contracts, says:

"Possession alone is not sufficient. A parol gift of land, even from father to son, will not be enforced unless followed by possession and by valuable improvements made by the donee, or unless there are some other special facts which would render the failure to complete the donation peculiarly inequitable and unjust. This rule, however, has no connection with the statute of frauds. In order to grant its remedy of a specific execution, equity requires a valuable consideration—it never enforces a voluntary agreement. The statute of frauds is satisfied by possession as a part performance, and the general doctrines of equity demand, in addition thereto, a valuable consideration. This latter demand is answered by the outlays, expenditures, and labors of the donee in making the valuable improvements as a consequence of the gift." (4 Pom. Eq. Jur. (3d Ed.), section 1409; *Harrison v. Harrison*, 36 W. Va. 556, 15 S. E. 87; *Wooldridge v. Hancock*, supra; *Lightner v. Lightner* (Va.), 23 S. E. 301; *Roberts v. Mulliner*, 94 Ga. 493, 20 S. E. 350.)

Upon a careful consideration of the whole case we think the evidence is insufficient to justify a decree granting the legal title of the premises to plaintiff. Of this case it may well be said, as was said by the court in *Zallmanzig v. Zallmanzig* (Tex. Civ. App.), 24 S. W. 944:

· "All the facts in the case are consistent with the assumption that there was merely a desire upon the part of the father to provide a home for his children, and that, without giving them any title to the land, he gave them permission to live on the land. In order to ingraft this exception onto the statute of frauds, which requires that a conveyance of lands must be evidenced by a memorandum in writing there should, in addition to the fact of possession and making of improvements, be clear and conclusive proof of the contract, its scope and terms. The object of the statute of frauds is to prevent the transfer of titles to lands 'on loose and intermediate proofs of what ought to be established by solemn written contracts.' (*Taylor v. Ashley*, 15 Tex. 50.) In order to sustain a verbal contract for the sale of land, of course, it is absolutely necessary to prove the verbal contract either by direct or circumstantial evidence; and this must be accompanied by proof of possession and strong equities independent of· the contract."

And in *Buhler v. Trombly* (Mich.), 102 N. W. 647:

"Here we do not find any agreement—any contract—to have been made. Considered in the light of complainant's own testimony, there was an act of bounty, merely, on the part of the father, which complainant naturally, and to his profit, was willing to accept; and, as has been already stated, it does not appear that he agreed to do anything, ·or ever did or refrained from doing anything, ever, in any way, changed his condition or circumstances, was induced tŏ forego any benefit or assume any liability, because of or relying upon the promise of the father."

Though it were conceded that all the allegations of the complaint with respect to the promise of contract had been established by sufficient evidence, the necessary and most essential allegation, that the plaintiff by reason of the gift or promise, and in reliance on· its execution, did or refrained from doing anything, or was induced thereby to change her condition or circumstances, or to forego any benefit, or to assume any liability, or that her status or relation had been so far altered that not to enforce a performance of the promise or gift perpetrates a fraud upon or inflicts an unjust and unconscionable injury and loss to her, is not established by sufficient evidence. She has shown no such strong equities as are required by the authorities, and which are required to be shown independent of the parol gift or verbal contract.

Courts of equity, in establishing the doctrine invoked by plaintiff, have not, by any means, intended to annul the statute of frauds, but only to prevent its being made the means

of perpetrating a fraud. In order that a plaintiff may be permitted to give evidence of a contract not in writing, and which is in the very teeth of the statute and a nullity at law, it is essential that he establish, by clear and positive proof, acts and things done in pursuance and on account thereof, exclusively referable thereto, and which take it out of the operation of the statute. (Pomeroy, sections 107, 108.) The law, under the statute of frauds, excluding all evidence of such a contract, to justify a court of equity in going against the plain words of the statute, a plaintiff is required to present strong equities for so doing, and a showing that a fraud will be perpetrated upon him if the statute is permitted to be interposed. Such a presentation and showing the plaintiff has failed to make.

The judgment of the court below is therefore reversed, and the case remanded for a new trial. Costs to be taxed against respondent.

McCARTY, J., concurs. BARTCH, C. J., concurs in the result.