HOLMGREN BROTHERS, INC., a Utah
Corporation, Plaintiff and
Respondent,

v.

Gerald BALLARD, a/k/a Thomas C. Ballard,
et al., Defendants and Appellants.

No. 13844.

Supreme Court of Utah.

April 14, 1975.

Sherma Hansen, Brigham City, W. Eugene Hansen, C. Jeffrey Thompson of Hansen & Orton, Salt Lake City, for defendants and appellants.

Omer J. Call, Brigham City, for plaintiff and respondent.

MAUGHAN, Justice:

In June of 1973, Gerald Ballard (hereafter defendant) orally agreed with Holmgren Brothers, Inc., (hereafter plaintiff) to convey to plaintiff approximately 160 acres of real property situated in Hansel Valley, Box Elder County. Plaintiff sued defendant, his wife Winona Ballard, and Seymour Greaves, a single man, defendant's seller under a real estate contract covering the 160 acres, the subject matter of the oral contract. The court, sitting without a jury, decreed specific performance, and it is from this judgment that defendants appeal.

Pursuant to this oral offer to sell defendant and plaintiff (acting through one Nyman Holmgren, plaintiff's president) drove to Logan, Utah, where defendant's contract of purchase was held in escrow at the Walker Bank & Trust Company. There the abstract to the property was delivered to plaintiff, and the arrangements were that plaintiff should take clear title, but do so by taking a deed directly from defendant's seller, one Seymour Greaves, because defendant was sure that title coming from Greaves would be clear, and plaintiff joined with defendant in thinking that was the best way to do it. Thereafter plaintiff and defendant called on a banker at First Security Bank in Tremonton. It was here that plaintiff drew a check in the amount of $18,500 payable to the order of "First Security Bank Agent," with a note at the top of the check "160 acres ground." The banker issued a receipt to plaintiff showing the $18,500 and containing the legend "To pay in full 160 acres of land when the title has been cleared and deed recorded." Both the check and receipt are dated June 15, 1973.

At this time plaintiff knew that defendant was in financial trouble, that defendant wanted to sell because he needed the money, and that defendant was obligated to pay several judgments. Plaintiff and defendant discussed the arrangement of the deed moving directly from Greaves to the plaintiff, and defendant was under the impression that were this to be done the judgments could be avoided, so far as this transaction was concerned. Fortunately, plaintiff submitted the abstract to its attorney and was advised that, if the transaction proceeded in such fashion, plaintiff

would incur an encumbrance greater in amount than the agreed purchase price, and that such a deed, as proffered by defendant, was not acceptable. Thereafter, counsel for plaintiff and for defendant began negotiations in an attempt to put the arrangement together, all of which came to naught.

Shortly after plaintiff had refused to take the proffered conveyance from defendant's seller, plaintiff entered the quarter section with defendant's consent, weeded and disced it. Also, at this time, when plaintiff discussed the weeding with defendant, plaintiff testified he asked defendant if the deal were still on, and defendant replied that it was.

Approximately a month later, defendant had sold other property to satisfy mortgages thereon, and had retired the judgments and other obligations. The other property was sold to an uncle of plaintiff's president. Shortly thereafter plaintiff approached defendant, asked about the "deal," and was told there would be no sale. Thereafter, plaintiff, without permission or discussion with defendant, drilled the quarter section in wheat, and testified that was done because he thought that such action may be helpful in enforcing the contract. At this time defendant's equipment was yet on the land.

The court found an oral contract for the sale of the described premises for the price of $18,500; that the purchase price of $18,500 was delivered by plaintiff to the defendant's banker at defendant's request, the *defendants Ballard* agreeing to perfect or clear the title and deliver marketable title to plaintiff; that pursuant to this contract plaintiff took the exclusive possession of said land, improved the property, weeding and discing and preparing the same for planting, and was in the process of planting the ground with wheat, when *defendants Ballard* stated they were disavowing their oral contract. It is on these grounds that plaintiff claims part performance and the right to enforcement.

The court concluded that plaintiff had performed the verbal contract by (1) payment of the purchase price, (2) taking possession of the premises, and (3) improving the land, and that such performance was sufficient to remove the contract from the prohibitions of the statute of frauds.

These findings are not supported by the evidence. There is no evidence to show that the banker was defendants' banker or that the payment was delivered at defendants' request. Indeed, the banker testified that he considered himself to be the agent of plaintiff, then speculated that he could have been the agent of defendant. There is no evidence showing that *defendants Ballard* agreed to perfect the title and deliver the same to plaintiff. There is no evidence to show plaintiff took exclusive possession of the land. There is evidence to show that plaintiff weeded and disced the land, but there is no evidence to show that plaintiff was in the process of planting the ground when *defendants Ballard* disavowed *their* oral contract. As a matter of fact, plaintiff testified that defendants said there would be no sale a week or two prior to plaintiff's voluntary entry upon the land, for that purpose.

Our statute of frauds [1] provides:

> Every contract for the . . . sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing.

A companion statute [2] provides:

> Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof.

The doctrine of part performance, in the state of Utah, has not been reduced to a formula, as it has in some of our sister states. Thus, decisions of this court do not

---

1. 25–5–3, U.C.A.1953, as amended.

2. 25–5–8, ibid.

stay the hand of equity in the equitable situations created by oral contracts for the transfer of an interest in land, but the statute is preserved and remains to serve its purpose—the prevention of fraud and injustice.

An analysis of our statute, with its qualifying companion allowing specific performance, and the decisions of this court, most of which, to 1964, are noted in Vol. 9, No. 1, Utah Law Review, p. 91, give us criteria describing conditions, which must necessarily exist before an oral contract for the sale of an interest in land can be enforced.

■ The oral contract and its terms must be clear, definite, mutually understood, and established by clear, unequivocal and definite testimony, or other evidence of the same quality.[3] In addition, there must be acts of part performance which in equity are considered sufficient to take the case out of the statute of frauds: (1) Any improvements made must be substantial, or valuable, or beneficial.[4] (2) A valuable consideration is demanded by equity.[5] (3) If there is possession, such possession must be actual, open, definite not concurrent with the vendor, but it must be with the consent of the vendor.[6] (4) Such acts as are relied on must be exclusively referable to the contract.[7]

The evidence shows there was an oral contract for the sale of a quarter section, sufficiently identified. It further shows that the agreement was made to transfer this quarter section to the plaintiff by means of a deed running directly from defendant's seller to the plaintiff. This arrangement is referred to in the transcript as a "by-pass deed." This is the only part of the oral agreement which was definite and certain, and mutually understood, by plaintiff and defendant.

■ Such agreement is in direct conflict with the legend on the receipt issued to plaintiff by the banker, if one were to view that as an offer continuing beyond the failure to reach agreement, for the transfer to plaintiff from Greaves. The evidence must show a clear, mutual understanding, and positive agreement of both parties to the terms of the contract. There is no evidence of any different or additional terms being agreed upon, although there is evidence of additional negotiations being carried on between counsel for plaintiff and for defendant, none of which produced any agreement. . The oral contract, as made, was rejected by plaintiff for the reason that defendant's financial difficulties had resulted in judgments in excess of the purchase price of the land. When plaintiff refused to accept the proffered conveyance, because of the judgment obligations, that contract came to an end. No new offers were made, and the record is devoid of any evidence to show that plaintiff and defendant came to any other kind of an understanding.

■ Where, as here, payment is advanced as one of the acts of part performance, it must be delivered to, and accepted by the vendor, in discharge of part, or all of the purchase price. It is to be noted that the $18,500 was in the form of a personal check, made payable to someone other than defendant, viz., "First Security Bank, Agent," and left on the condition stated in the receipt issued by that bank, to plaintiff. No part of the money represented by that check ever got into defendant's hands; it always remained within plaintiff's power to defeat payment, it was a conditional offer.

In Sousa v. First California Co.,[8] the court in addressing itself to the question of whether there had been payment sufficient

3. Christensen v. Christensen, 9 Utah 2d 102, 339 P.2d 101 (1959).

4. Price v. Lloyd, 31 Utah 86, 86 P. 767 (1906).

5. Price v. Lloyd, ibid.

6. Price v. Lloyd, ibid.

7. Price v. Lloyd, ibid.

8. 101 Cal.App.2d 533, 225 P.2d 955, 959 (1950).

to remove an oral contract from the statute of frauds, said:

> Can it be said that there was part payment which took the oral contract out of the statute notwithstanding the fact that no title to the check or to anything else passed to plaintiff? Payment is the performance of an obligation for the delivery of money, § 1478, Civil Code. The performance may take place by the delivery and acceptance of other things of value instead of money, but there is only payment when the money or other things of value are given and accepted in discharge of the obligation in whole or in part. [Cases cited.]

See also 73 Am.Jur.2d, Statute of Frauds, Sec. 442. Here we have only the deposit of a check, not even made payable to the vendor, and had it been it was subject to the condition that the title be clear, that the deed be delivered, and that the deed be recorded. All of these before the vendor was entitled to any money. Such a deposit is not a payment, and thus could not play any part in removing this oral contract from the prohibition of the statute.

■ Plaintiff claims "exclusive" possession. The evidence shows that plaintiff was on the land twice. Once when he weeded and disced it, but this was at a time after he had rejected the proffered conveyance, and plaintiff testified that he would not accept defendant's offer. How one could think that he had, at that time, purchased the property, and that it was his, when he had paid no consideration, was occupying the premises with the consent of, and concurrently with, defendant, and while his counsel was negotiating with defendant's counsel in an attempt to somehow put the transaction together, is not understandable. The second time plaintiff was on the land was at a time after plaintiff had been informed that the "deal was off," and this time plaintiff went upon the land, without the consent of defendant, testifying that he thought his presence there, drilling wheat, would aid in the enforcement of the oral contract. This latter act was clearly voluntary on his part, and one he admittedly took at his own risk. The fact that plaintiff was on the land once, with defendant's consent, concurrently with the vendor, is not such possession as would satisfy the requirement.

■ Plaintiff claims the improvements made to the land removed the contract from the statute. These improvements, made when plaintiff was on the land, with the consent of defendant, are not so substantial, valuable and beneficial that compensation cannot be made for them. Indeed, defendant testified he offered to pay for the weeding and discing, and plaintiff testified that defendant did so offer.

It only needs to be said that without an oral contract, its terms, and a mutual understanding, being proved by clear, unequivocal and definite evidence, there is no contract to which the claimed acts of part performance could apply, nor is there a contract which the court could enforce.

■ Plaintiff cites the case of Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N.W.2d 362, 166 A.L.R. 435, which holds that irreparable injury is not a necessary condition of part performance to take an oral contract out of the statute. With this we agree, but find it has no application here.

The court found that *defendants* Ballard agreed to perfect and deliver marketable title to plaintiff. There is absolutely no evidence that Mrs. Ballard ever agreed to do anything, that she ever said anything. Indeed, plaintiff admits that Mrs. Ballard was never consulted. Further, plaintiff proffers no reason why she was not, nor why she was not a necessary party.

■ There is no husband-wife exception to the statute of frauds. This court in Coombs v. Ouzounian, 24 Utah 2d 39, 465 P.2d 356 (1970), citing with approval O'Banion v. Paradiso, 61 Cal.2d 559, 39 Cal.Rptr. 370, 373, 393 P.2d 682, 685 (1964), held that a wife was not bound by her husband's actions, this certainly would rule out any claim plaintiff could have of an oral contract for the transfer

of an interest in land, from the defendants Ballard. Such a situation also disposes of the court's order requiring defendant *and Mrs. Ballard* to execute a deed to plaintiff.

The judgment is reversed and remanded with instructions to prepare findings of fact and conclusions of law in consonance with this opinion; to dissolve the injunction restraining defendant from entering upon his land; to determine the reasonable value of the weeding and discing performed by plaintiff while on defendant's land, with defendant's consent; to offset against the same the reasonable rental value for the priod during which defendants Ballard have been denied access, and enter judgment for the difference as the calculation dictates.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ.