Shirrel YOUNG, Plaintiff and Appellant,

v.

James P. MOORE, et al., Defendants and Respondents.

James P. MOORE and Joanne Moore, husband and wife, Third-Party Plaintiffs and Respondents,

v.

Shirrel R. YOUNG, and Jane Doe Young, husband and wife, A.L. Beal, single man; and the sole and only heirs of William Young and Myrtle Young, deceased, namely Frank Young and Ruth Young, husband and wife, Third-Party Defendants.

No. 17587.

Supreme Court of Utah.

April 15, 1983.

---

1.  Utah, 560 P.2d 331 (1977).

2.  *Jenner v. Real Estate Services*, Utah, 659 P.2d 1072 (1983).

L. Reid Ivins, Provo, for plaintiff and appellant.

James P. Moore, pro se.

STEWART, Justice:

The plaintiff, Shirrel Young, initiated this action to quiet title to a small, triangular parcel of land amounting to 6/100's of an acre located in Thistle, Utah County. Although the parties verbally agreed to a settlement of the case and the settlement agreement was reduced to writing by plaintiff's counsel, the writing was not signed by the parties. When Young refused to execute a quitclaim deed pursuant to the agreement, Moore sought a decree of specific performance of the settlement agreement, and the trial court entered a decree quieting title to the disputed land in Moore. From that decree, Young appeals.

At the commencement of this action, the legal descriptions of land titles in the Thistle area were frequently inaccurate. Young's claim to the property is based on a chain of title originating in a quitclaim deed from Utah County. Moore, who occupies the parcel in question, bases his claim to the property on a conveyance from his predecessor in interest and on a claim of adverse possession.

This suit was initiated by Young when Moore commenced building a garage on the disputed land. Young sought an order requiring Moore to remove the garage. Moore filed an answer to the quiet title claim and a counterclaim seeking a decree quieting title in him. At the direction of the trial court, and in an effort to bring some degree of order into the title descriptions in Thistle, the Utah County surveyor prepared a plat which suggested a resolution of the many conflicts between property owners in Thistle, including the parties to this suit.

Prior to the preparation of the plat, the parties and their attorneys held a meeting February 7, 1978 in which an agreement was reached resolving the litigation. The essential terms of the agreement were that Young would quitclaim to Moore the triangular parcel occupied by Moore, and Moore would quitclaim to Young property to which Moore had apparent title (per title descriptions) and which was occupied by Young. In addition, Moore was to admit he did not have legal title to the triangular property at the time he began constructing the garage; he was also to use his influence with his neighbors to induce them to cooperate with Young in correcting mistaken property descriptions in the areas where Young was purchasing property.

Pursuant to the agreement, Moore forwarded to Young for his signature a quitclaim deed conveying Young's interest in the triangular parcel. Young refused to execute the deed, and thereafter the decree challenged in this Court was entered by the trial court.

The district court found that the parties had concluded a settlement agreement at the February 7, 1978 meeting, but that the written memorialization of the agreement was not signed. The district court also found that Moore "believed the case was

settled and had acted thereon to his detriment [by] spending money, time and labor in completing the garage constructed [on the triangular lot]," and held that by virtue of an estoppel against Young the settlement agreement should be enforced and title quieted in Moore.

Young asserts on appeal that the agreement is unenforceable because it violates the statute of frauds. Young also attacks the findings of the trial court supporting the decree of specific performance.

The Utah statute of frauds, U.C.A., 1953, § 25–5–3 provides:

> Every contract for ... the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the ... sale is to be made, or by his lawful agent thereunto authorized in writing.

A companion statute, § 25–5–8, provides that part performance may remove a contract from the bar of the statute of frauds:

> Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof.

The doctrine of part performance in this State has not been confined to a fixed, inflexible formula. In *Holmgren Brothers, Inc. v. Ballard,* Utah, 534 P.2d 611 (1975), the Court stated:

> The doctrine of part performance, in the state of Utah, has not been reduced to a formula, as it has in some of our sister states. Thus, decisions of this court do not stay the hand of equity in the equitable situations created by oral contracts for the transfer of an interest in land, but the statute is preserved and remains to serve its purpose—the prevention of fraud and injustice.

*Id.* at 613–14.

However, as *Holmgren* held, for the doctrine of part performance to be applicable, the terms of the oral contract must be "clear, definite, mutually understood, and established by clear, unequivocal and defi-nite testimony, or other evidence of the same quality." *Id.* at 614. *Cf. Hackford v. Snow,* Utah, 657 P.2d 1271 (1982); *Reed v. Alvey,* Utah, 610 P.2d 1374 (1980). If possession is relied upon as evidence of the contract, the possession must be "open and known to [the other party to the contract] and not without his consent." *Ryan v. Earl,* Utah, 618 P.2d 54, 57 (1980); *Holmgren Brothers, Inc. v. Ballard, supra,* at 614.

■ Young does not really attack the existence of the oral contract on this appeal; indeed, it is difficult to see how he could do so. Nor does he contend that the agreement was ambiguous. Clearly, the agreement was definite and mutually understood. The settlement agreement was reached between both parties in the presence of their attorneys, and a written settlement agreement memorializing the oral agreement was prepared. There is no claim that the written document failed to state the agreement accurately. Indeed, Young's own attorney, who withdrew from the case after Young refused to comply with the agreement, dictated the terms of the settlement immediately after the meeting ended. The contract and its terms were further corroborated by the notes of Moore's attorney, and by correspondence from Moore's attorney to Young's attorney.

In addition, Moore had to prove acts of part performance sufficient to take the case out of the statute of frauds. Specifically, it was necessary to prove that (1) improvements that were made were substantial and referrable to the contract; (2) Moore was in occupation by consent; and (3) there was valuable consideration. *E.g., Holmgren Brothers, Inc., supra,* at 614. Young does not really maintain that there was an absence of consideration for the agreement.

Young contends that the trial court's findings that Moore's occupation of the land was with consent and that the improvements were referrable to the contract are not supported by the evidence. The trial court found that Moore "pursued a substantial improvement project on the land in question in reliance upon the settlement of February 7, 1978," and that "plaintiff was

aware that Moore was so proceeding." The standard rule is, of course, that the trial court's findings are accorded a presumption of validity and correctness and this Court will not disturb the findings if there is substantial support for them in the evidence. *E.g., Litho Sales, Inc. v. Cutrubus,* Utah, 636 P.2d 487 (1981). The parties' mutual obligations under the agreement to exchange deeds, so that their record titles would correspond to the land they actually occupied, clearly constituted consideration. Furthermore, in the finding that there was a valid agreement between the parties to settle the lawsuit, there is an implicit finding of valuable consideration.

As to Moore's occupation of the land, Young admitted that he knew Moore had proceeded with the construction of the garage after the settlement meeting, and yet Young took no action whatsoever to repudiate the agreement until much later in 1978 after he had refused to execute the deeds. Nor did Young, who is Moore's neighbor, object to Moore's continued construction after the oral agreement. Indeed, Young's consent to Moore's occupation was implicit in the agreement itself. The trial court's finding that Young had knowledge of Moore's activities is unassailable and necessarily implies consent, given the lawsuit, the relationship of the parties, and the agreement.

The more difficult issue is whether Moore's improvements made after the February 7, 1978 meeting were referrable to the contract. The trial court found that "Moore spent considerable money and spent time and labor" in completing the garage "after the February 7, 1978 meeting." Concededly, there is conflicting evidence on the point, but the trial court was justified in believing Moore's testimony that he spent some $3,000 and expended considerable time and labor in completing the building of the garage. Furthermore, his testimony was that he did so in reliance on the agreement. Indeed, given the background of the lawsuit and the settlement agreement, the most plausible conclusion is that the improvements were made in reliance on the agreement. In view of the trial court's advantaged position, we will not upset the trial court's findings because the evidence does not clearly preponderate against them. *E.g., Litho Sales, Inc. v. Cutrubus, supra.*

Finally, appellants argue that the trial court erred in ordering specific performance of the settlement agreement because Moore failed to complete his obligations under the agreement. The trial court's decree quieted title to the land in dispute only in Moore, although the court's memorandum decision stated that title was to be quieted in each party to that land agreed to be exchanged under the settlement agreement. To achieve an equitable result the decree should provide for complete performance of the settlement agreement by both parties.[1]

Accordingly, the decree quieting title is affirmed, but the case is remanded for modification of the decree to direct Moore's compliance with the terms of the settlement agreement.

The other contentions raised by appellant are without merit.

Affirmed. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.

---

1. Appellant argues that specific performance of the obligation of both parties under the agreement to influence others in Thistle to cooperate in solving title problems is unenforceable because a contract for personal services is unenforceable. *E.g., Bethlehem Engineering Export Co. v. Christie,* 105 F.2d 933 (2nd Cir.1939). We agree, and that provision should not be included in an amended decree.