## STEPHENS v. STEPHENS et al.

No. 3115.   Decided December 21, 1917.   (169 Pac. 742.)

1. GIFTS—PAROL GIFTS OF LAND—SUFFICIENCY OF EVIDENCE.   Evidence *held* insufficient to show a parol gift of land.   (Page 270.)

2. GIFTS—PARENT AND CHILD—BUILDING ON PARENT'S LAND.   Statements of sons while erecting a house on land owned by their mother, not in her presence, that they were building it so that she could collect the rent as long as she lived, was insufficient to show that the mother was only to have a life estate therein, or that the sons were intended to have an interest therein.   (Page 272.)

Appeal from District Court of Weber County, Second District; *Hon. N. J. Harris*, Judge.

Action for partition by John F. Stephens against Olive Ethel Stephens and Merlin H. Stephens, a minor, by Olive Ethel Stephens, his guardian.   Harriet O. Shaw was made a party at the instance of the defendants.

Judgment of partition and accounting.   Defendants appeal.

REMANDED, with directions.

*R. S. Farnsworth* for appellants.

*Chez & Stine* for respondents.

THURMAN, J.

This action was brought for the partition of certain real property in Ogden, Utah.   Plaintiff and defendants are cotenants of the property described in the complaint and certain other property described in the answer and counterclaim. The property was accumulated by plaintiff and one James Henry Stephens, now deceased, as partners during the lifetime of the latter, each owning a one-half interest therein. Defendants are the widow and adopted son of the said James

Henry Stephens, and have succeeded to his interest in said property, each owning a one-fourth interest therein. The plaintiff and James Henry, for the sake of brevity, will hereafter be referred to as "John" and "Henry." In addition to the property described in the complaint the defendants, in their answer, alleged the existence of other lots and parcels of land in Ogden owned by plaintiff and defendants, and prayed for a partition thereof. Among the said lots and parcels of land so alleged in the answer and counterclaim to be owned by plaintiff and defendants is one parcel standing in the name of Harriet O. Shaw, mother of John and Henry. Defendants prayed that Harriet O. Shaw be made a party to the action in order that the rights of all parties might be adjudicated and determined. An order was made to that effect, and said Harriet O. Shaw was made a party to the action.

Plaintiff replied to the answer and counterclaim of the defendants, denying, among other things, that plaintiff and defendants owned the property standing in the name of Harriet O. Shaw referred to in defendants' counterclaim, and on the contrary affirmatively alleged that it was, and at all times had been, the property of said Harriet O. Shaw. The said Harriet O. Shaw also appeared in answer to the order making her a party, and answering the defendants' cross-complaint denied the allegations thereof, and affirmatively alleged that she was the owner of the property standing in her name referred to in defendants' cross-complaint.

The case was tried to the court. A partition and accounting was ordered as to the common property not in dispute, and a judgment rendered in favor of respondent, Harriet O. Shaw, for the parcel of land claimed by her. Defendants appeal from this part of the judgment and assign many errors, all of which, however, relate to the ownership of the land awarded to respondent. The single question, therefore, presented by this appeal, is as to the ownership of this particular parcel of land.

With a single exception, which will hereafter be referred to, there is very little, if any, conflict in the evidence. The ma-

terial facts are that respondent is the mother of John and Henry, and is, and ever since 1896 has been, the owner in fee simple of the parcel of land upon which two houses were constructed as hereinafter stated; that John and Henry, in the lifetime of the latter, were partners in the saloon business in Ogden, and as such accumulated the common property for which this action for partition was brought; that in 1906 their mother, the respondent here, was living where she still lives in her own home on a parcel of land adjacent to the land and premises in controversy; that in the fall of that year John and Henry, with some little assistance of other relatives in Ogden, constructed two houses on this land of their mother's, which houses have ever since been rented and occupied by divers tenants, some of whom were witnesses at the trial of this case; that ever since the houses were constructed the respondent has had possession of the keys to both houses when not occupied by tenants, but usually the rents have been collected by one or the other of her boys, John or Henry; that prior to the death of Henry in April, 1910, he generally collected the rent, but some of the time it was collected by John, and after the death of Henry it was collected by John. The record, however, shows that on a few occasions the rent was paid to the mother direct. The exact arrangement under which these houses were constructed is to a great extent a matter of deduction from circumstances. The fact that defendants claim an interest in the property as heirs of their deceased husband and father, and respondent claims as an adverse party, disqualified her as a witness at the trial as to any fact equally within the knowledge of Henry in his lifetime. The same rule was applied to the plaintiff, as a witness, the result of which was that all of the parties to whatever arrangement there was were either dead or disqualified by law. Hence the court in the trial of the case was compelled to rely soley upon inferences from circumstances or from statements of parties not disqualified by interest and who knew nothing of the formal understanding, if there was one, between the parties. It is claimed by the appellants in their counterclaim that this property, both the land and the houses, was

the common property of plaintiff and defendants the same as the other common property about which there is no dispute. In their assignments of error they charge, in effect, that the court erred in not finding that the respondent had merely a life estate in the premises, and that she was entitled only to the rents and profits during her lifetime. This claim applies both to the land and the houses thereon. On the other hand, the respondent's contention is that she is the absolute owner in fee simple of both the land and the houses; that the land was hers in fee simple before the houses were built, and that her boys, John and Henry, and other relatives, constructed the houses for her and gave them to her; that John and Henry collected the rents for her, and accounted to her for the money received; that such services were performed by them as sons for their mother, and not otherwise.

The question presented is largely one of fact, and in view of the fact that the finding of the court relating to this particular property is in apparent conflict with the conclusion of law and judgment awarding the property to respondent, it becomes necessary to examine the evidence with more care and detail than would otherwise be necessary in order, if possible, to reconcile the conflict referred to. The finding in question will be referred to specifically hereafter.

We have diligently searched the record in this case for any substantial evidence sufficient in law to support appellants' claim that the respondent gave the land in question to her boys, John and Henry, and have found none except the unsupported testimony of the defendant Mrs. Olive Ethel Stephens that in 1906, when the houses were being constructed, respondent told her in a conversation that she had given the land to the boys. This conversation was flatly contradicted by respondent, and in the opinion of the court it is contradicted by all the circumstances in the case. If the land had been given by respondent to her boys ten years before the trial of the case, as claimed by defendant, it is inconceivable why a conveyance in writing was not executed by respondent. The parties, except Henry, who is dead, have lived in Ogden all the time, and if a gift had been in-

tended, why was it not executed in some form that would give it a standing as a gift or real property? Why were the keys to the houses when not occupied by tenants given to and left with respondent all these years? The plaintiff, John F. Stephens, disclaims any interest in the property, either to the land or the houses, and alleges that it belongs to his mother. He is one of the alleged donees of the gift. It cannot be successfully contended that in disclaiming an interest he is subserving a selfish purpose. He would obtain a greater interest by supporting the theory of a gift, by which he would obtain one-half of the property, than by insisting that the property belongs to his mother who has other children living besides himself who would share in a distribution at her death if she continued to be the owner of the property. As before stated, however, the evidence is utterly insufficient in law to support a parol gift of land.

"To establish a parol gift of land the clearest and most satisfactory evidence is required. The proof must be clear, definite, and conclusive, not only as to the fact of the gift, but also of acts done by the donee upon the faith of the gift such as would render inequitable any attempt on the part of the donor to avoid it." 14 A. & E. Ency. of Law, 1042, and cases cited.

We quote the following note cited in the foregoing text:

"Where a son goes into possession of his father's lands and makes improvements, a jury is not to infer from that, in the absence of other evidence, that the father gave the land to him. Loose declarations of the father in casual conversations calling the land his son's property, without any explanation as to how it came to be his, are not sufficient evidence of a gift"—citing cases. "Mere possession and the making of some improvements do not dispense with the necessity of producing distinct proof of the principal fact, that is, that there was a gift, and even if there was actually a gift, the donee is not entitled to the aid of equity when the improvements are slight and not of permanent value." 12 Ruling Case Law, 939, 940.

See, also, *Shirley* v. *Shirley*, 92 Cal. 44, 27 Pac. 1097; *Poullain* v. *Poullain*, 76 Ga. 420, 4 S. E. 92; *Truman* v. *Truman et al.*, 79 Iowa, 506, 44 N. W. 721; *Wilson* v. *Wilson*, 99 Iowa, 688, 68 N. W. 910; *Flanigan* v. *Waters*, 57 Kan. 18, 45 Pac. 56; *Ogsbury* v. *Ogsbury*, 115 N. Y. 290, 22 N. E. 219; *Zall-*

*manzig* v. *Zallmanzig* (Tex. Civ. App.) 24 S. W. 944; *Harrison* v. *Harrison*, 36 W. Va. 556, 15 S. E. 87; *Poorman* v. *Kilgore*, 26 Pa. 365, 67 Am. Dec. 524; *Cox* v. *Cox*, 26 Pa. 375,67 Am. Dec. 432; *Forward* v. *Armstead*, 12 Ala. 124, 46 Am. Dec. 246, 20 Cyc. 1200, 1201, and cases cited.

But it is contended by appellants that the court ought to have found that respondent had merely a life estate in the premises, and was entitled only to collect the rents and profits during her lifetime. The strongest evidence we have been able to find in support of this contention is the testimony of one Henry Bateman, a witness for defendants. He testified, in substance, that while he was working on the houses laying a foundation he had some conversation with Henry in which Henry said he was building the houses for his mother; that he wanted her to have something to support her, or, in substance, to that effect. Bateman also testified that he believed Henry said his mother was going to take the rents as long as she lived. He also testified that he believed John said the same thing.

As far as we are able to determine from the record, the testimony of the witness Bateman affords the only substantial support, if it is substantial, that appellants have for their contention that respondent has only a life estate in the premises. This being the only testimony bearing directly upon this particular question, it is well at this point to consider its effect. The land belonged to respondent in fee simple. These houses were constructed upon it. It was in her possession at all times. There was no contract agreement or understanding in writing; in fact, no oral agreement even, unless this statement by Henry established one. Respondent was not present when the statement was made. The remainder of a fee-simple estate after a life estate is involved. The question is, Is such evidence, unsupported by other facts or circumstances bearing upon the same point, sufficient to divest respondent of all title in and to the remainder of a fee-simple estate? The authorities heretofore referred to certainly do not lend support to appellants' contention. If Henry or John, or both of them, had had some kind of a contract or

agreement with respondent, appearing from the evidence in the record with reasonable certainty as to their right to the remainder after the death of their mother a different case might be presented for our consideration. It was not as if Henry and John were strangers to respondent and in no way legally or morally obligated to contribute to her support. They were her sons, and they appear to have been dutiful sons, and it cannot be said that what they were doing was so extraordinary and unusual in dutiful sons as to justify the conclusion that their conduct was induced by a valuable consideration or promise of any kind on the part of their mother.

The other evidence in the case relating to this question need not be set out or commented on at length. It is all to the effect that John and Henry, with some assistance from other relatives, built the houses for respondent for her support and maintenance; that they were given to her for that purpose without any sort of limitation on her estate; that the other relatives worked upon the buildings at the request of John and Henry, Henry in particular, who represented that their work was being donated to respondent. Thus advised, the relatives referred to donated their services also.

In view of these uncontroverted facts the trial court ought to have found unequivocally that the premises were hers in fee simple. No doubt he intended to do so, inasmuch as the conclusions of law were to that effect. But one clause in the findings to the effect that the houses were given to her "for her support and maintenance during her lifetime" renders the finding ambiguous as to whether or not a limitation upon her estate was intended. For this reason it becomes necessary to remand the cause, with directions to the trial court to recast the findings in accordance with these suggestions and enter conclusions of law and judgment accordingly. It is so ordered. Respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.