366 P.2d 130

Paul R. HALLIDAY, Plaintiff-Appellant,

v.

Sylvia V. HALLIDAY, Executrix of the Estate of Peter R. Halliday, deceased, and Sylvia V. Halliday, Individually, Defendant-Respondent.

No. 8908.

Supreme Court of Idaho.

Nov. 10, 1961.

Stephen Bistline, Sandpoint, for appellant.

526

Greene & Hunt, Sandpoint, for respondent.

TAYLOR, Chief Justice.

Plaintiff (appellant) commenced this action February 27, 1959, against his father

and mother seeking a decree quieting title in him to certain real property, alleging that he acquired title to the property by gift from them and that, relying upon the gift, plaintiff had taken possession of the property, made valuable improvements and paid taxes thereon.

December 15, 1959, the defendant Peter R. Halliday died at the age of 79 years, and thereafter the defendant Sylvia V. Halliday, aged 80 years at time of trial in February, 1960, was appointed executrix of Peter's estate, and substituted as a party defendant.

The property involved, twenty to twenty-three acres in extent, is located on the shore of Pend Oreille lake in Bonner county. The Hallidays, residents of Spokane, Washington, acquired the property by purchase in 1940 for a consideration of $300; in 1947 they purchased a "crew car", referred to in the evidence as a "box car", from a railroad company and moved it onto the property at a cost of $300. Thereafter, Peter Halliday and the plaintiff, his son, (also a resident of Spokane, Washington, and 41 years of age at the time of trial) did some finishing and remodeling and built an addition onto the back of the car, and put down a well on the property.

Plaintiff testified that in March, 1953, he and his wife were desirous of moving to Sandpoint, Idaho, twelve miles from the property (sometimes referred to as the lake property); that at that time he discussed the proposed move with his mother, in his father's presence; and "it seemed that we spent all of our time, free time you might say, recreational and so on, up here, so I asked my mother again to confirm the fact if she would for me, so that—if this property was going to be mine, and I said because we were contemplating a very serious move in our lives, and I said if she would confirm this and she asked me what I meant, and I told her that we would like to come up here and establish this and build it as our home because it was near the things that we liked to do and in a part of the country that we liked, so I said before we make this move, I said, we are going to be giving up considerable positions on both our parts, and I said I want you to please confirm for me that you are going to convey this property to me and before we make this move and she told me that she would, and she wasn't specific that it would be immediately that day or the next day but she said that I could rest assured that this would be done and as a result my wife and I both gave up our jobs and made this move to come to the property which we assumed would in the near future be conveyed to us, or some manner that we would feel secure".

Plaintiff further testified that he and his wife moved onto the property in the spring of 1953; that he procured a divorce in August, 1955, was married to present

wife in August, 1958; that he continued in possession of the property, and was in possession at the time of trial; and that he actually lived on the property continuously, except for the months of winter when because of road conditions it was more convenient to live in Sandpoint where he was employed; that in 1955 he built an addition on the front of the house and added two bedrooms and a bath, and thereafter made other improvements to the house, surrounding land and adjacent beach; that he had expended for labor and material in such improvements the sum of $3,479.23, in addition to his own labor which he estimated at 1,000 hours, average time each year, which he valued at $1 per hour; that in 1958, while his mother was visiting on the property, he told her that he had discontinued making further improvements because he had no security, by deed or otherwise, and "she said, 'As a token, I would like to give Grace and Josephine' [who are my two sisters] she said, 'At least $500.'"; that he also told her he was willing to waive any right he might have to any other part of his parents' estate; and that "maybe I can borrow a thousand dollars and you can give them the $500 and strike me from your Will or any other way from the town property, * * * because this is the only thing that I am interested in is right here and because * * * this is my home, this is where I want to make my home, continue to make my home," and "she immediately, as usual, she rebuffed this suggestion and the conversation was stricken at that point"; that his mother at that time "she went on to say that I always—that I should be ashamed of myself because I was acting as though they were already dead and buried, and she said 'We are going to live for a long time,' and she said, 'Don't you worry,' she said, 'you will be taken care of, * * * You're crowding us and you'll be taken care of.'"

Plaintiff paid taxes on the lake property for the years 1953, 1954, 1955 and 1956 in the total amount of $64.57.

Defendant (respondent), Mrs. Sylvia V. Halliday, testified that neither she nor her husband ever gave or promised to give the lake property to the defendant; that she and her husband had discussed their estate at various times and pursuant to agreement had made their wills leaving their estate in equal shares to their three children—the plaintiff and his two sisters; that she had so advised plaintiff and that he knew of his parents' wishes, but he continued to urge them to convey the lake property to him; that she at times had refused to discuss with plaintiff his proposals "because Paul always lost his temper about it, so I wouldn't discuss it with him"; that neither she nor her husband had ever requested the plaintiff to move upon the property or to make any improvements or

to pay the taxes thereon; that they never considered or requested rental from plaintiff; that in taking possession, improving the property, and paying taxes thereon, the plaintiff acted of his own free will, for the enhancement of his own enjoyment of the property, and for the use and benefit of his parents; that at one time she and her husband planned to sell their home in Spokane and move to the lake property in retirement; that Peter Halliday fell from the steps at the lake property in May or June, 1959, and was later placed in a rest home where he remained until his death.

Mrs. Cleaver, a long time friend of the family, testified to the improvements made by plaintiff and that a few days before the trial Mrs. Halliday had told her "We always had intended for him (Paul) to have it" but that she had the younger daughter to consider.

An abstract of title to the lake property was introduced in evidence as plaintiff's exhibit 1. It contains a copy of the will of Peter R. Halliday, executed December 2, 1958, paragraph IV of which is as follows:

"At this time my principal assets consist of my home at West 2409 Broadway Avenue, Spokane, Washington, and a 23½-acre tract on the shores of Pend Oreille Lake, described as Government Lot 3, of Section 30, State of Idaho. My son, Paul R. Halliday, has been residing at Sandpoint, Idaho, for the past several years and has been using the Lake property for a residence in the summer time without any charge. Since the past summer he has made some claim to the Lake property on the basis of an alleged oral gift from his mother and myself. He has further threatened suit to establish this oral gift. I do not recognize any such gift and am desirous of discouraging any litigation on this account after my death."

Two real estate brokers testified as to the value of the property.

The court found the lake property was at the time of the trial of the value of $25,000 for the real estate, and $3,000 for the improvements; that it had rental value of $50 to $100 per month for the four months of July, August, September and October, and $20 to $25 per month during the other months of the year; that the value of the property in 1953 was at least $10,000, and that the increase in value from the time of purchase to the time of trial was principally due to the rise in the value of lake frontage during that period.

The "memorandum decision" of the trial court "adopted in place of formal findings of fact and conclusions of law," pursuant to stipulation of counsel, contains the following:

"There is no testimony showing that the plaintiff, Paul R. Halliday, prior to

coming to Sandpoint, ever gave his parents any special consideration or that he ever assisted them financially or otherwise, or that he was entitled to any more consideration than his two sisters who are now living. * * *

"The court sees no reason why the defendants should have made a gift of the land to the plaintiff when the land, according to the evidence, was of the value of at least $10,000. It is more reasonable to believe that the plaintiff made the improvements and spent what money he did spend for the advantages and pleasures received by him through living on the place than it is to believe that the defendants gave or promised to give the plaintiff the land as a gift when the value of the land was at least $10,000.

"It is my opinion, therefore, that the defendants did not give the plaintiff the property in question and that they did not promise to give him the property, and that plaintiff has no estate, right, title, or interest in or to the said property * * *."

The sole assignment of error is as follows:

"The trial court's determination that there was not a gift is not based upon competent evidence and is against the evidence, and was entered under erroneous and prejudicial conceptions of law, to-wit:

"(a) That consideration is an element of a gift, and

"(b) That reasonableness is an element of a gift, and

"(c) That a 'reason' for making a gift is an element of proof.

"and further by an erroneous and prejudicial failure or refusal to consider the testimony of the only disinterested witness on the main issue of the case."

We do not construe the quoted portions of the memorandum decision to hold or imply that a gift must be supported by a consideration, or that a reason for, or the reasonableness of, a gift must be shown. The recitals in the memorandum decision are merely a statement by the trial judge of the facts, or absence of facts, which he considered in arriving at his conclusion. The evidence on the issue of a gift, or promise of a gift, was conflicting and the judge was required to weigh the evidence, and all pertinent facts and surrounding circumstances, in reaching a decision.

The failure of the trial judge to refer specifically to the testimony of the disinterested witness, Mrs. Cleaver, in his memorandum decision, does not warrant the conclusion that such testimony was not considered and evaluated.

The trial judge discounted plaintiff's testimony that he had put in an average of 1,000 hours per year of his own labor, in improving the lake property. The judge stated he was unable to determine from the invoices and vouchers introduced in evidence by plaintiff whether all of the $3,479.23 he claimed to have spent for labor and material, was devoted to improving the property or whether some of the items were for plaintiff's personal use. The judge also considered the value of the use of the property by plaintiff. These were proper matters for the trier of the facts to consider in determining whether the expenditures were made by plaintiff in reliance upon the asserted promise of a gift of the property, and in determining whether a gift was in fact made or promised.

The burden was upon plaintiff to establish the claimed gift, or promise of gift, by clear and convincing evidence. Idaho First Nat. Bank v. First Nat. Bank of Caldwell, 81 Idaho 285, 340 P.2d 1094; Claunch v. Whyte, 73 Idaho 243, 249 P.2d 915; In re Estate of Randall, 64 Idaho 629, 132 P.2d 763, 135 P.2d 299. Plaintiff did not sustain that burden and the conclusion against him is supported by competent and substantial evidence. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Stephens v. Stephens, 51 Utah 267, 169 P. 742; 39 Am.Jur., Parent and Child, § 97, page 742.

Judgment affirmed.

Costs to respondent.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.